Robert J. **BAKER,** Howard **McDougall,** **Thomas F. O'Malley, R.V. Pulliam, Marion Winstead, Harold J. Yates, Loran W. Robbins, Earl L. Jennings, Jr., as Trustees of the Central States, Southeast and Southwest Areas Pension Fund, Plaintiffs,**

v.

**CARAVAN MOVING CORPORATION and Charles W. Corcoran, Defendants.**

No. 82 C 3857.

United States District Court, N.D. Illinois, E.D.

April 4, 1983.

Kenneth J. Weinberger, Coghlan, Joyce, Nellis & Kelly, Chicago, Ill., for plaintiffs.

Charles W. Corcoran, pro se.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs in this case, trustees of the Central States, Southeast and Southwest Areas Pension Fund ("the Trustees") have brought suit to satisfy a judgment obtained against Iredale Storage and Moving Company ("Iredale"), for failure to make monthly health and welfare contributions as required by a collective bargaining agreement and multi-employer plan under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq. Robert J. Baker, et al. v. Iredale Storage and Moving Co.,* No. 80 C 1296 (N.D.Ill. Jan. 27, 1981). Jurisdiction is asserted pursuant to 29 U.S.C. § 1132(e)(1).[1] Presently pending is the Trustees' motion for summary judgment to enforce its judgment against Caravan Moving Corporation ("Caravan"), a holding company, and individually against Charles W. Corcoran ("Corcoran"), president and sole shareholder of both Iredale and Caravan. For reasons set forth below, the Trustees' motion is granted in part and denied in part.

Count I of the complaint alleges that Caravan is a sham corporation, the alter ego of Iredale, and therefore should be liable for the judgment rendered against Iredale. The Trustees claim that both corporations function, in reality, as a common enterprise and that the unity of interest between the two corporations justifies piercing Caravan's corporate veil. Count II seeks to hold Corcoran personally liable as an employer through the Illinois Wage Payment Collection Act, Ill.Rev.Stat. ch. 48, ¶ 39m–1 *et seq.*[2] That Act holds an employer personally liable for failure to pay employer contributions due to an employee benefit trust as a result of a collective bargaining agreement.

 In deciding motions for summary judgment, it must be emphasized that the

---

1. 29 U.S.C. § 1132(e) provides that:

 (1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

 (2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

2. The Illinois Wage Payment Collection Act provides, in pertinent part, that:

 39m–2. Definitions—Wages—Final compensation—Wage supplements

 § 2. For all employees, other than separated employees, "wages" shall be defined as compensation for labor or services rendered, whether the amount is determined on a time, task, piece, or any other basis of calculation. Payments to separated employees shall be termed "final compensation" and shall be defined as wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays. Where an employer is legally committed through a collective bargaining agreement or otherwise to make contributions to an employee benefit, trust or fund on the basis of a certain amount per hour, day, week or other period of time, the amount due from the employer to such employee benefit, trust, or fund shall be defined as "Wage Supplements", subject to the wage collection provisions of this Act.

 39m–13. Officers and agents deemed to be employers

 § 13. Any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.

 39m–14. Refusal to pay wages or final compensation—Punishment—Failure to obey order to pay wages—Penalty

 § 14. Any employer or any agent of an employer, who, being able to pay wages, final compensation, or wage supplements and being under a duty to pay, wilfully refuses to pay as provided in this Act, or falsely denies the amount or validity thereof or that the same is due, with intent to secure for himself or other person any underpayment of such indebtedness or with intent to annoy, harass, oppress, hinder, delay or defraud the person to whom such indebtedness is due, upon conviction, is guilty of a Class C misdemeanor. Each day during which any violation of this Act continues shall constitute a separate and distinct offense.

party moving for summary judgment has the burden of clearly establishing that no genuine issues of material fact exist, and that he or she is entitled to judgment as a matter of law. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir.1979). Doubts as to the existence of material issues of fact must be resolved against the moving party. *Moutoux v. Gulling Auto Electric, Inc.,* 295 F.2d 573, 576 (7th Cir.1961). At this time, defendants have not filed a response to the plaintiff's motion for summary judgment. With this in mind, we turn to an examination of the instant controversy.

## COUNT I

The Trustees allege that Caravan's sole function is to serve as a buffer to protect the assets of Iredale against creditors. Caravan was incorporated sometime in the 1950's but did not engage in any business until 1978, when it purchased the land used by Iredale for its business from Roth Mortgage Co. The same property was previously owned by Corcoran until he sold it to Roth Mortgage sometime in the 1960's. Roth continues to hold the mortgage on the property. Caravan receives rent from Iredale, applying it totally to the payment of the Roth mortgage. Corcoran concedes that Caravan engages in no business, maintains no business premises, pays no salaries and has no employees other than himself. Corcoran maintains the same capacity in both corporations, being president, sole director and sole owner.

■ A corporation's legal identity may be disregarded if the corporation is used to justify wrong, protect fraud or defend crime. *Anderson v. Abbott,* 321 U.S. 349, 64 S.Ct. 531, 88 L.Ed. 793 (1944). Under the alter ego doctrine, courts will "pierce the corporate veil" and hold a defendant liable when there is:

> ... control by the parent to such a degree that the subsidiary has become its

mere instrumentality; fraud or wrong by the parent through its subsidiary, e.g., torts, violation of a statute or stripping the subsidiary of its assets; and unjust loss or injury to the claimant, such as insolvency of the subsidiary.

*Steven v. Roscoe Turner Aeronautical Corp.,* 324 F.2d 157, 160 (7th Cir.1963). This doctrine applies to affiliated corporations owned by the same individual, as well as parent/subsidiary corporations. *Matter of Bowen Transports, Inc.,* 551 F.2d 171, 179 (7th Cir.1977); *Allied Chemical Corp. v. Randall,* 321 F.2d 320, 323 (7th Cir.1963); *Holland v. Joy Candy Manufacturing Corp.,* 14 Ill.App.2d 531, 145 N.E.2d 101 (1957).

■ In applying the alter ego doctrine, the court thus focuses on the "reality and not form" concerning the operations of affiliate corporations. Caravan has a single asset; without rental payments from Iredale, used exclusively to pay for the financing of its property, Caravan has no other function. It is dependent wholly on Iredale for its existence. Apart from Caravan, Iredale itself has no assets. Corcoran admits that Caravan has executed mortgages and liens to pay the debts of Iredale from the assets of Caravan in the past. Presently, Caravan has secured with its property liens to Reuben H. Donnelly and to Allied Van Lines for debts incurred by Iredale. And Corcoran admittedly offered to secure the Trustees' judgment by executing a mortgage against Caravan's property.[3]

■ Enforcement of the Trustees' judgment against Iredale is effectively precluded because the only asset of value is held by Iredale's affiliate, Caravan. When an affiliated corporate structure is used as a shield to circumvent the intended purpose of legislation, courts will disregard the corporate entity and find a corporation liable for the debts of its affiliate. *Anderson v. Abbott,* 321 U.S. 349, 64 S.Ct. 531, 88 L.Ed. 793 (1944); *Kavanaugh v. Ford Motor Co.,* 353 F.2d 710, 719 (7th Cir.1965). A sham

---

**3.** In his deposition of February 12, 1981, Charles Corcoran stated:

> ... It is my intention to cause Caravan to issue a mortgage on that [Caravan's] property to you as Plaintiffs.... (Dep.R. 27).

corporation used to escape obligations under collective bargaining agreements and ERISA may be held liable for such contributions. *Carpenters Local Union No. 1846 v. Pratt-Farnsworth*, 690 F.2d 489, 525–27 (5th Cir.1982). Caravan is thus liable for the judgment rendered against Iredale, since both corporations function as a common enterprise.

## COUNT II

 The Trustees sued Corcoran individually in Count II, pursuant to the Illinois Wage Payment Collection Act, Ill.Rev. Stat. ch. 48 ¶ 39m–1 et seq. This Act makes an employer's wilful failure to contribute to an employee benefit program a Class C misdemeanor. *See* note 2, *supra*. But an examination of ERISA reveals Congress' explicitly stated intent to override state laws which "relate to" employee benefit plans. ERISA § 514, 29 U.S.C. § 1144;[4] *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). *Cf. Bucyrus-Erie Co. v. Dept. of Industry, Labor and Human Relations of the State of Wisconsin*, 599 F.2d 205, 207 (7th Cir.1979), *cert. denied*, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980) (ERISA does not preempt state fair employment laws, since preemption of such laws would impair the federal framework for prohibiting employment discrimination).[5] The Illinois statute at issue clearly "relates to" employee benefit plans, at least in part. While § 514(b) of ERISA, 29 U.S.C. § 1144, leaves intact state criminal laws or general applicability, *see* note 4, *supra*, the Illinois Wage Payment Collection Act is not such a law. State criminal laws aimed specifically at employee benefit plans were not meant to be left intact by § 514(b). *Commonwealth of Massachusetts v. Federico*, 383 Mass. 485, 419 N.E.2d 1374, 1378 (1981). The Labor Department has agreed with this analysis.[6] The Illinois Wage Payment Collection Act applies to the employer-employee relationship and is thus broader than the Massachusetts statute at issue in *Federico, supra*, but it nevertheless cannot be considered a "generally applicable" state law.

---

4. 29 U.S.C. § 1144 provides that:
 (a) Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employer benefit plan described in section 4(a) and not exempt under section 4(b).

 \* \* \* \* \* \*

 (b)(4) Subsection (a) shall not apply to any generally applicable criminal law of a State.

5. An Illinois court has recently held that ERISA preempted an action brought pursuant to the Illinois Insurance Code seeking specific performance of an alleged contract damages, despite a 29 U.S.C. § 1144(b)(2)(A) which exempts State laws relating to insurance, banking or securities. *Russo v. Boland*, 103 Ill.App.3d 905, 59 Ill.Dec. 537, 431 N.E.2d 1294 (1982).

6. The Opinion Letter issued by the Secretary of Labor addressed the preemption of a Massachusetts law in *Federico*:
 The issue was whether the criminal provisions of the Massachusetts law fell within the exception to preemption afforded by section 514(b)(4).

 \* \* \* \* \* \*

 The Massachusetts Act is applicable only to employee welfare and pension benefit plans. Sections 6 and 11 of this act provide for fines or imprisonment, or both, where there has been embezzlement or fraud involving plan assets or delinquent contributions by an employer. The rest of the law is clearly preempted by the provisions of ERISA.
 The Labor Department stated that if the general grand larceny provisions of a state code applied to pension trustees, the exception provided by section 514(b)(4) would come into play. However, a law which applies only to welfare and pension plans is not a "generally applicable" law. Accordingly, the criminal provisions of the Massachusetts "Health, Welfare and Retirement Funds" Law are not a generally applicable law and are preempted under ERISA Sec. 514(a). Section 514(b)(4) does not exempt this law from preemption.
 Opinion Letter 79–36 (CCH) ¶ 25,304 at 27,005–33–34 (October 5, 1979). Even though the Illinois Wage Payment Act (unlike the Massachusetts Act) applies to all employers and employees, ERISA preempts the Illinois statute to the extent that it regulates pension and welfare plans. While the Illinois law provides for criminal penalties, we find it is not so broad as to encompass the narrow interpretation of "generally applicable" state law as defined in ERISA § 514(a) and § 514(b)(4). *But see, Goldstein v. Mangano*, 99 Misc.2d 523, 417 N.Y.S.2d 368 (1978).

It is thus not exempted by § 514(b) of ERISA from the general preemption language contained in § 514(a). As a result, the Illinois Wage Payment Collection Act, insofar as it applies to employer contributions to employee benefit plans, is preempted by ERISA. We therefore decline to grant the Trustees the relief sought in Count II. Because we hold that an action against Corcoran individually cannot be brought pursuant to the Illinois Wage Payment Collection Act, Count II is dismissed and judgment is entered for Corcoran as to that count.

Therefore, the Trustees' motion for summary judgment against Caravan Moving Corporation in the amount of $33,138.76 is granted; summary judgment against Charles W. Corcoran is denied. Judgment is hereby entered for Corcoran as to Count II. It is so ordered.