CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, Plaintiff-Appellant, v. JAMES McHUGH CONSTRUCTION COMPANY, Defendant-Appellee.

First District (2nd Division)   No. 1—91—1733

Opinion filed June 9, 1992.

Arnold & Kadjan, of Chicago (Donald D. Schwartz and Charles A. Linn, of counsel), for appellant.

Pedersen & Houpt, of Chicago (Donald J. Moran and Emmanuel A. Sevastianos, of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff Construction and General Laborers' District Council of Chicago and Vicinity (Laborers' Council) brought suit on behalf of la-

borers employed by a subcontractor of defendant James McHugh Construction Company (McHugh), alleging violations of minimum wage requirements pursuant to the Illinois Prevailing Wage Act (Wage Act) (Ill. Rev. Stat. 1989, ch. 48, par. 39s—1 *et seq.*). The circuit court granted McHugh's motion to dismiss Laborers' Council's complaint, finding that the complaint was preempted by the Employee Retirement Income Security Act (ERISA) (29 U.S.C. §1001 *et seq.* (1988)). Laborers' Council appeals, contending (1) that the circuit court erred in holding that its complaint for underpayment of minimum wages required by the Wage Act relates to employee benefit plans and thus is preempted by ERISA; and (2) that McHugh, as a general contractor, is liable under the Wage Act for its subcontractor's failure to pay minimum wages to its employees.

On July 30, 1990, Laborers' Council, a labor union which acts as the bargaining agent and representative for construction laborers, filed a complaint against McHugh, a general contractor of a public works construction project. Laborers' Council's complaint alleged that McHugh was obligated to pay fringe benefit contributions owed to an employee benefit plan by its subcontractor, Suburban Plumbing Company and SPC Mechanical Contractors (Suburban/SPC).

■ Specifically, the complaint averred that McHugh entered into a contract with Suburban/SPC, its subcontractor, to perform construction work on a "public works" project; subsequently, Suburban/SPC, bound by a collective bargaining agreement with Laborers' Council, failed to pay six of its employees "fringe benefits contributions." Accordingly, Laborers' Council sought to recover from McHugh the sum of $13,710.16, the difference between the wages paid and the rates provided by the bargaining agreements and the Wage Act. Laborers' Council predicated recovery upon section 11 of the Wage Act which provides, in pertinent part:

> "Any laborer, worker or mechanic employed by the contractor or by any sub-contractor under him who is paid for his services in a sum less than the stipulated rates for work done under such contract, shall have a right of action for whatever difference there may be between the amount so paid, and the rates provided by the contract ***. *** An action brought to recover same shall be deemed to be a suit for wages, and any and all judgments entered therein shall have the same force and effect as other judgments for wages." (Ill. Rev. Stat. 1989, ch. 48, par. 39s—11.)

According to the Wage Act, the "prevailing rate of wages" means "the hourly cash wages plus fringe benefits for health and welfare, in-

surance, vacations and pensions paid generally." Ill. Rev. Stat. 1989, ch. 48, par. 39s—2.

McHugh moved to dismiss Laborers' Council's complaint on the basis that ERISA preempts State court actions based on State law as they relate to employee benefit plans, and that the Wage Act provides an employee with a cause of action only against his immediate employer, in this case, Suburban/SPC. The circuit court granted McHugh's motion to dismiss on the basis that the cause of action was preempted by ERISA, allowing Laborers' Council leave to file an amended complaint.

Laborers' Council's amended complaint, filed January 3, 1991, set forth essentially the same allegations, with one variation: instead of alleging that "Suburban/SPC failed to pay fringe benefit contributions," the amended complaint alleged that "Suburban/SPC underpaid the 'prevailing rate of wages' *** by the amount of the fringe benefit component of those wages." McHugh again moved to dismiss the complaint on the basis that ERISA preempted the cause of action and that the Wage Act provides a right of action only against an immediate employer. The circuit court granted McHugh's motion to dismiss, finding that Laborers' Council's cause of action was preempted by section 514(a) of ERISA. 29 U.S.C. §1144(a) (1988).

Laborers' Council initially contends that the circuit court erred in finding that its amended complaint, brought pursuant to the Wage Act, was preempted by ERISA. Specifically, Laborers' Council maintains that its claim for wages under the Wage Act in no manner relates to any benefit plan, and thus is not preempted by ERISA.

■ ERISA was designed as a comprehensive statute to promote the interests of employees and their beneficiaries in employee benefit plans. (*Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 90, 77 L. Ed. 2d 490, 497, 103 S. Ct. 2890, 2896.) Although ERISA does not mandate that employers provide any particular benefits, for employers who do provide certain pension and welfare benefits, ERISA imposes participation, funding, and vesting requirements, and sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility. (29 U.S.C. §§1021-31, 1051-86, 1104-1114 (1988).) ERISA also includes an express preemption provision providing that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. (29 U.S.C. §1144(a) (1988).) An "employee welfare benefit plan" is defined by ERISA as:

> "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an em-

ployee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, \*\*\* medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs." (29 U.S.C. §1002(1) (1990).)

Likewise, an " 'employee pension benefit plan' \*\*\* mean[s] any plan, fund or program which \*\*\* provides retirement income to employees." 29 U.S.C. §1002(2)(a)(i) (1988).

■ The question of whether a certain State action is preempted by a Federal law is one of congressional intent. (*Pilot Life Insurance Co. v. Dedeaux* (1987), 481 U.S. 41, 95 L. Ed. 2d 39, 107 S. Ct. 1549; *Ingersoll-Rand Co. v. McClendon* (1990), 498 U.S. 133, 138, 112 L. Ed. 2d 474, 483, 111 S. Ct. 478, 482.) The Supreme Court has examined the scope of ERISA and has determined that its "deliberately expansive" language was "designed to 'establish pension plan regulation as exclusively a federal concern.' " (*Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. at 46, 95 L. Ed. 2d at 46, 107 S. Ct. at 1552, quoting *Alessi v. Raybestos-Manhattan, Inc.* (1981), 451 U.S. 504, 523, 68 L. Ed. 2d 402, 416, 101 S. Ct. 1895, 1906.) The Court has further held that Congress used the words "relate to" in their broad sense, rejecting more limited preemption language that would have made the clause "applicable only to state laws relating to the specific subjects covered by ERISA." (*Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 98, 77 L. Ed. 2d at 502, 103 S. Ct. at 2900.) To underscore its intent that section 514(a) of ERISA be expansively applied, Congress used equally broad language in defining the "State law" that would be preempted: such laws include "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. §1144(c)(1) (1990).

■ "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." (*Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 96-97, 77 L. Ed. 2d at 501, 103 S. Ct. at 2900.) Under this "broad commonsense meaning," a State law may "relate to" a benefit plan, and thus be preempted, even if the law is not specifically designed to affect such plans, or the effect is indirect. (*Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. at 47, 95 L. Ed. 2d at 48, 107 S. Ct. at 1553.) Thus, such connection exists where a State statute prescribes the type and amount of an employer's contributions to a plan, the rules

and regulations under which the plan operates, or the nature and amount of the benefits provided thereunder. *General Electric Co. v. New York State Department of Labor* (2d Cir. 1989), 891 F.2d 25, 29.

■■ Notwithstanding its breadth, the preemptive scope of ERISA is neither all-encompassing, nor unlimited. (*Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 100 n.21, 77 L. Ed. 2d at 503 n.21, 103 S. Ct. at 2901 n.21; *Aetna Life Insurance Co. v. Borges* (2d Cir. 1989), 869 F.2d 142, 145; *Rebaldo v. Cuomo* (2d Cir. 1984), 749 F.2d 133, 138.) "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." (*Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 100 n.21, 77 L. Ed. 2d at 503 n.21, 103 S. Ct. at 2901 n.21.) Correspondingly, ERISA does not invalidate those State statutes whose effect on pension plans is simply tangential in nature. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 100 n.21, 77 L. Ed. 2d at 503 n.21, 103 S. Ct. at 2901 n.21.

In the case *sub judice*, Laborers' Council asserts that its claim for payment of minimum wages, even if the amount of wages sought has been determined by the amount of unpaid benefit contributions (welfare, pension, and education) as required by the Wage Act, does not in any manner "relate to" a benefit or pension plan. Rather, Laborers' Council contends that there is no benefit plan involved in the instant case; it maintains that its claim "relates only to wages." For support, Laborers' Council relies upon *Golen v. Chamberlain Manufacturing Corp.* (1985), 139 Ill. App. 3d 53, 487 N.E.2d 121, where the court held that the plaintiff's claim that the defendant was liable for breach of an employment contract for pension credits was not preempted by ERISA. The *Golen* court reasoned that because the plaintiff's claim did not concern the substance of the pension plan, nor did it concern regulation of the plan, the pension plan was only tangentially and incidentally involved. *Golen v. Chamberlain Manufacturing Corp.*, 139 Ill. App. 3d at 57-58.

Laborers' Council also relies upon *In re Tap Electrical Contracting Service, Inc.* (1989), 156 A.D.2d 612, 549 N.Y.S.2d 118, where the court addressed the issue of whether a claim of an employer's underpayment of prevailing wages and supplements brought pursuant to a New York statute similar to the Wage Act was preempted by ERISA. The *Tap* court held that "[s]ince the petitioner did not provide its employees with vacation and holiday supplements through a plan but rather, paid them through its pay-

roll, ERISA does not preclude the application of the New York State Labor Law to regulate the rate of such payments." (*In re Tap Electrical Contracting Service, Inc.*, 156 A.D.2d at 613, 549 N.Y.S.2d at 120.) In so holding, the *Tap* court relied upon *Massachusetts v. Morash* (1989), 490 U.S. 107, 116, 104 L. Ed. 2d 98, 109, 109 S. Ct. 1668, 1673, which stated "[i]t is unlikely that Congress intended to subject to ERISA's reporting and disclosure requirements those vacation benefits which by their nature are payable on a regular basis from the general assets of the employer and are accumulated over time only at the election of the employee." The *Tap* court further held that several of the "supplement[al] plans were covered and governed by ERISA, namely the welfare, pension, annuity and joint educational funds, and that the matter must therefore be remitted to the Department of Labor to compute the exact amount of non-ERISA supplement underpayments." *In re Tap Electrical Contracting Service, Inc.*, 156 A.D.2d at 614, 549 N.Y.S.2d at 120.

Although initially it appears that Laborers' Council's position is well taken, the strength of its argument diminishes with a review of the cases addressing the preemption question. Those cases are predominantly the decisions of Federal courts which are controlling in the interpretation of a Federal statute. (*Elgin, Joliet & Eastern Ry. Co. v. Industrial Comm'n* (1956), 9 Ill. 2d 505, 507, 138 N.E.2d 553; *Golden Bear Family Restaurants, Inc. v. Murray* (1986), 144 Ill. App. 3d 616, 619-20, 494 N.E.2d 581.) Admittedly, the distinction between State laws that "relate to" employee benefit plans and those that have only a "tenuous, remote, or peripheral" impact is not always clear. One way to bring the distinction into focus is to compare the types of State laws that courts have found to be preempted to those that have survived challenges on preemption grounds.

State laws that have been ruled not preempted include: a generally applicable garnishment law under which creditors can garnish ERISA welfare benefits (*Mackey v. Lanier Collections Agency & Service, Inc.* (1988), 486 U.S. 825, 100 L. Ed. 2d 836, 108 S. Ct. 2182); a law requiring companies to make lump-sum severance payments when closing a plant (*Fort Halifax Packing Co. v. Coyne* (1987), 482 U.S. 1, 96 L. Ed. 2d 1, 107 S. Ct. 2211); a State escheat law governing ERISA-covered benefit checks and drafts which were issued but not collected (*Aetna Life Insurance Co. v. Borges*, 869 F.2d 142); a law prescribing what hospitals can charge for in-patient care, thereby preventing benefit plans from negotiat-

ing their own discount rates with hospitals (*Rebaldo v. Cuomo*, 749 F.2d 133); and section 5 of the Wage Act, which governs vacation plans (*Golden Bear Family Restaurants, Inc. v. Murray*, 144 Ill. App. 3d 616).

State laws, or actions pursuant to State law, that have been preempted include: a State law wrongful discharge claim based on an employer's desire to avoid making contributions to a pension plan (*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 112 L. Ed. 2d 474, 111 S. Ct. 478); common law tort and contract actions asserting improper processing of a claim for benefits under an ERISA-covered benefit program (*Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 95 L. Ed. 2d 39, 107 S. Ct. 1549); a law forbidding discrimination in employee benefit programs on the basis of pregnancy (*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 77 L. Ed. 2d 490, 103 S. Ct. 2890); a law prohibiting offsets of workers' compensation payments against pension benefits (*Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 68 L. Ed. 2d 402, 101 S. Ct. 1895); section 13 of the Wage Act, proscribing and limiting actions concerning pension contributions (*Plumbers' Pension Fund, Local 130 v. Niedrich* (7th Cir. 1989), 891 F.2d 1297); a law requiring that the wage rate, including "supplements," on public works not be less than the prevailing rate paid in the locality (*General Electric Co. v. New York State Department of Labor*, 891 F.2d 25); a city resolution and county ordinance requiring payment of "prevailing wages" to employees before building permits for private construction would be issued (*Associated Builders & Contractors, Golden Gate Chapter, Inc. v. Baca* (N.D. Cal. 1991), 769 F. Supp. 1537); and a State law cause of action for denial of severance benefits based on breach of contract and violation of the Wage Act (*Arnold v. Babcock & Wilcox Co.* (1988), 123 Ill. 2d 67, 525 N.E.2d 59).

■■ Generalizing from the preceding cases, we conclude that the circuit court did not err in holding that Laborers' Council's claim was preempted by ERISA. ERISA preemption is triggered by not just any indirect effect on administrative procedures, but rather by an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit. (See *Aetna Life Insurance Co. v. Borges*, 869 F.2d at 146-47.) "[T]he Illinois Wage Payment Collection Act, insofar as it applies to employer contributions to employee benefit plans, is preempted by ERISA." *Baker v. Caravan Moving Corp.* (N.D. Ill. 1983), 561 F. Supp. 337, 342. But see *Upholsterer's Inter-*

*national Union Health & Welfare Fund Trustees v. Pontiac Furniture, Inc.* (C.D. Ill. 1986), 647 F. Supp. 1053, 1056-57.

In the instant case, although Laborers' Council insists that its claim is one for "wages" only, those wages are based upon fringe benefit contributions for "health and welfare, insurance, vacations, and pensions," within the purview of ERISA. (Ill. Rev. Stat. 1989, ch. 48, par. 39s—2.) As McHugh correctly points out, Laborers' Council's claim seeks to recover the underpayment of pension, welfare, and education benefits that Suburban/SPC owed to the funds. The "fringe benefit contribution compliance audit" performed on Suburban/SPC, attached to Laborers' Council's complaint, specifically finds underpayment of welfare, pension, and education contributions.

Although the regulation of labor costs in public works projects is surely a valid exercise of a State's traditional regulatory authority, and as such should not be superseded by ERISA "unless this conclusion is unavoidable," preemption in the instant case is indeed necessary and unavoidable. (See *Rebaldo v. Cuomo,* 749 F.2d at 138.) Those "wages" which Laborers' Council seeks to recover are welfare and pension contributions in the form of "fringe benefits"; as such, its claim pursuant to the Wage Act is preempted by ERISA. *Baker v. Caravan Moving Corp.,* 561 F. Supp. at 342; see *Mylstar Electronics, Inc. v. Donald J. McNeil* (N.D. Ill. June 2, 1986) No. 86—C—387 (holding that ERISA preempts the operation of the Illinois Wage Act insofar as it would require the payment of benefits under a severance plan).

Because of our finding that Laborers' Council's claim is preempted by ERISA, we need not address Laborers' Council's second contention that McHugh, as the general contractor, is liable for a subcontractor's violation of the Wage Act.

Based on the foregoing analysis, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN, P.J., and McCORMICK, J., concur.