CEMENT MASONS PENSION FUND, Local 803, *et al.,* Plaintiffs-Appellants, v. WILLIAM A. RANDOLPH, INC., Defendant-Appellee.

First District (1st Division)   No. 1—03—1670

Opinion filed June 20, 2005.

Donald D. Schwartz, of Arnold & Kadjan, of Chicago, for appellants.

Joseph G. Bisceglia and Terence G. Banich II, both of Jenner & Block, L.L.P., of Chicago, for appellee.

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiffs, fringe benefit funds administrators, sued defendant, William A. Randolph, Inc., for the failure of its subcontractor to pay its employees the prevailing wage pursuant to the Illinois Prevailing Wage Act (the Act) (820 ILCS 130/1 *et seq.* (West 1998)). Defendant moved for dismissal arguing that: (1) the Employee Retirement Income Security Act of 1974 (ERISA) (514 U.S.C. § 1144(a) (2000)) preempts the Act; and (2) the Act does not provide a cause of action for a subcontractor's employees to sue a general contractor to recover unpaid prevailing wages. The circuit court granted defendant's motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2002)), based on this court's decision in *Construction & General Laborers' District Council of Chicago & Vicinity v. James McHugh Construction Co.*, 230 Ill. App. 3d 939, 596 N.E.2d 19 (1992).

Plaintiffs appeal the judgment of the circuit court alleging that ERISA does not preempt the Act based on recent United States Supreme Court and Illinois Supreme Court cases interpreting ERISA that were decided subsequent to *McHugh Construction Co.*, 230 Ill. App. 3d 939, 596 N.E.2d 19. For the reasons that follow, we affirm the judgment of the circuit court.

## BACKGROUND

Plaintiffs are fringe benefits funds affiliated with the Cement Mason's Union, Local 803. In 1999, defendant, William A. Randolph, Inc., entered into a contract with Glenbard Public High School District 87 to perform construction work on a public works project. Defendant subcontracted with Everhard, Inc., to perform masonry work on the

project.[1] Everhard employed members of plaintiffs' funds who performed the masonry work on the project.

Prior to the project's completion, Everhard became insolvent and ceased paying into the plaintiffs' funds on behalf of its employees.[2]

On September 8, 2000, plaintiffs filed suit against Everhard and defendant in the United States District Court seeking payment by Everhard and defendant of Everhard's employees' union benefits. Plaintiffs claimed, among other things, that defendant was liable for Everhard's payments to the fund based on a collective bargaining agreement between defendant and the Cement Mason's Union and on provisions of the Act. The federal court granted defendant's motion for summary dismissal finding that the collective bargaining agreement between defendant and the Cement Mason's Union did not obligate defendant to guarantee Everhard's union benefits to its employees. The federal district court, however, did not rule on plaintiffs' claim that the Act imposed liability on a general contractor for the failure of its subcontractor to pay union benefits for its employees. The federal district court requested that the parties brief the issue of whether a general contractor could be held liable for a subcontractor's failure to comply with the provision of the Act.[3]

On December 31, 2002, plaintiffs filed a one-count complaint in the circuit court of Cook County. Plaintiffs alleged that by ceasing to contribute to plaintiffs' funds on behalf of its employees, Everhard failed to pay the prevailing wage pursuant to the Act. 820 ILCS 130/1 et seq. (West 1998). Plaintiffs further alleged that "Everhard's failure to pay prevailing rates makes defendant Randolph liable for the wage underpayment pursuant to the Illinois Prevailing Rate [sic] Act ***." Plaintiffs do not allege that defendant failed to pay benefits into plaintiffs' funds on behalf of its own employees.

On April 3, 2003, defendant moved to dismiss plaintiffs' complaint pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615, 2—619(a)(9) (West 2002)). Following arguments on defendant's motion to dismiss, the circuit court granted

---

[1]Everhard is not a party to this appeal.

[2]The record reflects that plaintiffs sought and obtained a judgment against Everhard; however, Everhard filed for bankruptcy protection and plaintiffs were unable to collect the judgment from Everhard.

[3]The parties to this appeal have not indicated that any further action was taken in the federal courts and the record does not show that the federal case was pursued after the district court's initial ruling. At oral arguments, plaintiffs indicated that the federal proceedings were stayed pending the outcome of the bankruptcy action.

defendant's motion on May 15, 2003, based on this court's decision in *McHugh Construction Co.*, 230 Ill. App. 3d 939, 596 N.E.2d 19.

Plaintiffs filed this timely appeal arguing that: (1) a general contractor is liable for a subcontractor's failure to comply with the provisions of the Act based on the language and intent of the Act; and (2) the Act is not preempted by ERISA based on more recent decisions of the United States Supreme Court and the Illinois Supreme Court.

## ANALYSIS

Before addressing the merits of this case, we note that the parties' primary focus is on the issue of ERISA's preemption of the Act. Both parties acknowledge, however, that although the circuit court did not rule on the issue of whether a subcontractor's employees may bring suit against a general contractor for their employer's violation of the Act, this issue was briefed and argued in both the circuit court and here on appeal. We also note that this is an issue of first impression in Illinois and a threshold issue in deciding whether ERISA preempts the Act for purposes of plaintiffs' appeal. Because we can affirm the trial court's judgment on any basis appearing in the record (*Inland Land Appreciation Fund, L.P. v. County of Kane*, 344 Ill. App. 3d 720, 726, 800 N.E.2d 1232 (2003)), we will first determine whether the subcontractor's employees may seek reimbursement for the prevailing wages under the statute. If so, then we must address whether the Act is preempted by ERISA. If, on the other hand, the employees of the subcontractor do not have a cause of action against the contractor pursuant to the Act, then we need not reach the issue of whether the Act is preempted by ERISA.

## GENERAL CONTRACTOR LIABILITY UNDER THE ACT

Plaintiffs have brought this suit against defendant, a general contractor, for the failure of its subcontractor, Everhard, to pay its employees the prevailing wage pursuant to the Act. Defendant argued in the circuit court and on appeal that the language of the Act does not permit the employees of a subcontractor to bring a cause of action against a general contractor for the subcontractor's violations of the Act. Plaintiffs, however, argue that general contractors are responsible for the violations of the Act by subcontractors and that their position is supported by: (1) the language and intent of the Act, which "is replete with references" to the policy in Illinois that requires a general contractor to guarantee the payments of the subcontractor's employees; (2) section 11 of the Act, which refers to only "one contract" and further notes that it is only between the general contractor and the public body; and (3) section 4 of the Act, which requires a contractor to secure a bond to guaranty the performance of the prevailing wage.

We review a dismissal by the circuit court pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 2000)) *de novo. Chicorp, Inc. v. Bower*, 336 Ill. App. 3d 132, 136-37, 782 N.E.2d 768 (2002).

■ The Act was adopted in 1941 and its general purpose is to compel municipalities and other legal entities to ascertain and pay prevailing wages on public projects. *City of Monmouth v. Lorenz*, 30 Ill. 2d 60, 62 (1963). Section 1 of the Act states:

> "It is the policy of the State of Illinois that a wage of no less than the general prevailing hourly rate as paid for work of a similar character in the locality in which the work is performed, shall be paid to all laborers, workers and mechanics employed by or on behalf of any and all public bodies engaged in public works." 820 ILCS 130/1 (West 1998).

The provisions of the Act "appl[y] to the wages of laborers, mechanics and other workers employed in any public works *** by any public body and to anyone under contracts for public works." 820 ILCS 130/2 (West 1998). Plaintiffs first point out that sections 1, 3 and 4 of the Act specify that "not less than the prevailing rate shall be paid" to all workers on public projects. See 820 ILCS 130/1, 3, 4 (West 1998). Plaintiffs also emphasize the language in section 4 of the Act that provides:

> "The public body awarding the contract shall cause to be inserted in the contract a stipulation to the effect that not less than the prevailing rate of wages as found by the public body or Department of Labor or determined by the court on review shall be paid to all laborers, workers and mechanics performing work under the contract. It shall also require in all such contractor's bonds that the contractor include such provision as will guarantee the faithful performance of such prevailing wage clause as provided by contract." 820 ILCS 130/4 (West 1998).

Plaintiffs here seek to interpret the Act in a manner that would require a general contractor to guarantee the prevailing wage payments to its subcontractor's employees.

When interpreting provisions of a statute, the cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81, 630 N.E.2d 820 (1994); *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 194, 595 N.E.2d 561 (1992). In this endeavor, the courts should look first to the statutory language (*Hernon*, 149 Ill. 2d at 194), for the language of the statute is the best indication of the legislature's intent (*Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 51, 563 N.E.2d

465 (1990)). Where the meaning of an enactment is unclear from the statutory language itself, the court may look beyond the language employed and consider the purpose behind the law to consider the purposes of the statute. *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 55, 765 N.E.2d 1002 (2002); *Antunes v. Sookhakitch*, 146 Ill. 2d 477, 484, 588 N.E.2d 1111 (1992). Where, however, the language of a statutory provision is clear, the court must give it effect without resorting to other aids for construction. *Solich*, 158 Ill. 2d at 81; *People v. Boykin*, 94 Ill. 2d 138, 141, 445 N.E.2d 1174 (1983).

Although no part of the Act expressly states that a general contractor will be responsible for the violations of a subcontractor, plaintiffs urge us to hold that the legislative intent behind the statute would be thwarted if they were not permitted to seek payment from a general contractor under these circumstances. Plaintiffs argue that defendant's position is contrary to the stated purpose of the Act and that if we do not hold the contractor liable for its subcontractor's violations, the general contractor will be allowed to subcontract away its mandatory obligations under the Act. 820 ILCS 130/1 (West 1998). Plaintiffs further note that there is no language limiting an employee's right to seek restitution for underpayment of the prevailing wage present in the Act. We disagree with plaintiffs' interpretation of the Act.

Although we do not take lightly the duties imposed upon a contractor pursuant to the Act, we similarly will not lightly read liability into a statute for which the legislature did not provide. We do not disagree with plaintiffs that it was the intent of the legislature to ensure that all workers be paid the prevailing wage pursuant to the Act. The question presented in this case is whether the legislature intended for the general contractor to be the guarantor of that intent. While we agree that the purpose of the Act is to provide for prevailing wages to workers on a public project, we do not read the policy statement or any other part of the Act to operate as a guarantee clause for the general contractor.

Section 11 provides, in pertinent part:

> "Any *** worker *** employed by the contractor or by any subcontractor under him who is paid for his services in a sum less than the stipulated rates for work done under such contract, shall have a right of action for whatever difference there may be between the amount so paid, and the rates provided by the contract ***."

820 ILCS 130/11 (West 1998). Notwithstanding the language of section 11, the Act does not specifically identify the entity that will be held responsible in an action undertaken by underpaid employees. Hence, we must decide whether the legislature intended that the general contractor assume the risk of

a subcontractor's failure to comply with provisions of the Act. In our view, plaintiffs' interpretation cannot be reconciled with the plain language of the Act or the expression of the legislature's intent when the statute is viewed in its entirety.

When interpreting statutes, courts must read the statute as a whole and not as isolated provisions. *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 463, 722 N.E.2d 1115 (1999); *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656 (1990). Here, plaintiffs single out the language of section 11 that refers to a cause of action by employees of a contractor or subcontractor. However, when read as a whole, the Act expressly holds contractors, subcontractors and others responsible for their violations of the Act. For example, section 4 of the Act imposes the duty of paying the prevailing rates individually upon the contractor and the subcontractor. Section 4 provides, in pertinent part:

"[I]t shall be mandatory upon the contractor to whom the contract is awarded and upon any subcontractor under him, and where the public body performs the work, upon the public body, to pay not less than the specified rates to all laborers, workers and mechanics employed by them in the execution of the contract or such work ***." 820 ILCS 130/4 (West 1998).

Section 5 of the Act requires:

"The contractor and each subcontractor or the officer of the public body in charge of the project shall keep or cause to be kept, an accurate record showing the names and occupation of all laborers, workers and mechanics employed by them, in connection with said public work, and showing also the actual hourly wages paid to each of such persons, which record shall be open at all reasonable hours to the inspection of the public body awarding the contract, its officers and agents, and to the Director of Labor and his deputies and agents." 820 ILCS 130/5 (West 1998).

Section 6 of the Act delineates enforcement measures to be taken against those who fail to keep the records as required by section 5. Section 6 provides:

"Any officer, agent or representative of any public body who wilfully violates, or omits to comply with, any of the provisions of this Act, and any contractor or subcontractor, or agent or representative thereof, doing public work as aforesaid, who neglects to keep, or cause to be kept, an accurate record of the names, occupation and actual wages paid to each laborer, worker and mechanic employed by him, in connection with the public work or who refuses to allow access to same at any reasonable hour to any person authorized to inspect same under this Act, is guilty of a Class B misdemeanor." 820 ILCS 130/6 (West 1998).

It is clear from the language of sections 5 and 6 that the individual

entities enumerated are responsible for compliance with the provisions of section 5 and that they are each individually subject to the punishment described in section 6.

Similarly, section 11(a) of the Act prescribes the consequences for contractors and subcontractors that disregard obligations to their employees. 820 ILCS 130/11(a) (West 1998). Section 11(a) empowers the Department of Labor (Department) to identify contractors or subcontractors found to have paid employees less than the prevailing wage and publish their names on a list of entities barred from receiving public works contracts. The legislature went as far as to prohibit awarding public works contracts to contractors or subcontractors appearing on the list or to any firm, corporation, partnership or association in which the contractor or subcontractor has an interest for two years. 820 ILCS 130/11(a) (West 1998). No mention is made in this section of a general contractor's liability for the actions of a subcontractor. No other part of the Act imposes liability on the general contractor for any violations committed by the subcontractor. More importantly, no explicit language provides for the relief that plaintiffs seek here.

We may not, under the guise of statutory interpretation, supply omissions, remedy defects, annex new provisions, substitute different provisions, exceptions, limitations or conditions, or otherwise change the law so as to depart from the language employed in the Act. *DeWig v. Landshire, Inc.*, 281 Ill. App. 3d 138, 143, 666 N.E.2d 1024 (1996). For this reason, we reject plaintiffs' argument based on the language of the Act and its proposed interpretation.

Plaintiffs contend that their position is supported by section 11 of the Act because a cause of action is created for "[a]ny *** worker *** employed by the contractor or by any sub-contractor under him who is paid for his services in a sum" less than the prevailing wage. 820 ILCS 130/11 (West 1998). Plaintiffs also note that the Act refers to only one "contract," and that is the contract between the public body and the general contractor. Plaintiffs further point out that the public body does not have any contractual agreement with the subcontractor and may not even know that the contractor intends to subcontract any of the work under the contract. It is the contractor that controls the identities of the entities that actually perform the work on the job. Thus, it is the general contractor that must supervise the work of the subcontractor and therefore be responsible for the actions of the subcontractor.

The Act, however, imposes no express duty upon the contractor to guarantee that the subcontractor pay its employees the prevailing wage. Furthermore, no court has ever interpreted Illinois' Prevailing

Wage Act to impose such liability on the contractor. Moreover, as defendant points out, the plain language of the Act that creates the cause of action against "[a] contractor *or* subcontractor" by an employee, expresses an alternative, which is the choice between two or more things only one of which may be chosen. See *Maryland Division of Labor & Industry v. Triangle General Contractors, Inc.*, 366 Md. 407, 421, 784 A.2d 534, 542 (2001). Defendant also asserts that the legislature must have intended for the Act to impose liability on the contractor for violations relative to its employees and upon a subcontractor for violations against its employees to avoid an unintended result. Whereas under plaintiffs' interpretation of the statute, because it refers to a contractor or subcontractor, the general contractor's employees would also be able to sue a subcontractor for the difference of the unpaid prevailing wages, leading to an unintended result. Defendant asserts that this is an absurd result and the legislature clearly did not intend for the Act to be interpreted in such a manner. We agree and find plaintiffs' construction too tortured an interpretation of the language of the Act. Based on the language contained in the Act, we decline to expand its meaning to allow a cause of action against a general contractor for the violations of a subcontractor.

In addition to the language of the statute, plaintiffs cite to cases from other jurisdictions to support the proposition that defendant may be held liable for violations of the Act by its subcontractor. *Board v. Eurostyle, Inc.*, 998 S.W.2d 810 (Mo. App. 1999); *In re Sheridan Construction Inc.*, 28 WH Cases 1409 (No. 86 DBA 18 May 5, 1988); *Mohr v. J. Pease Construction Co.*, No. 92 C 8342 (N.D. Ill. May 2, 1994). Plaintiff urges this court to find that a general contractor is liable under the Act based upon the above cases. However, the statutes that are construed in those cases are distinguishable from our statute in Illinois.

In *Eurostyle*, the Missouri Court of Appeals was called upon to interpret the application of section 290.300 of Missouri's prevailing wage law when employees of a subcontractor brought an action against a general contractor. *Eurostyle*, 998 S.W.2d at 812; Mo. Rev. Stat. § 290.300 (1994). Section 290.300 of the Missouri statute provides in pertinent part:

> "Any workman employed by the contractor or by any subcontractor under the contractor who shall be paid for his services in a sum less than the stipulated rates for work done under the contract, shall have a right of action for double whatever difference there may be between the amount so paid and the rates provided by the contract together with a reasonable attorney's fee to be determined by the court ***." Mo. Rev. Stat. § 290.300 (1994).

The lower court in *Eurostyle* held that workers employed by a subcontractor were entitled to recover double the amount of unpaid wages and attorney fees from the subcontractor, but only the amount of unpaid wages against the general contractor.

On review, the Missouri Court of Appeals reversed the finding of the lower court and held that the onus for compliance with the applicable prevailing wage provisions was clearly on the general contractor. *Eurostyle*, 998 S.W.2d at 813. The *Eurostyle* court based its conclusion on the portion of Missouri's prevailing wage law that provides a remedy for a general contractor against a subcontractor that violates the prevailing wage statute and the requirement that a general contractor obtain a performance bond to assure the payment of wages earned by its workers and workers employed by subcontractors. *Eurostyle*, 998 S.W.2d at 813. Specifically, the Missouri prevailing wage law permits contractors to "withhold from payments to subcontractors amounts withheld from the contractor 'on account of said subcontractor's failure to comply with the terms of sections 290.210 to 209.340.' " *Eurostyle*, 998 S.W.2d at 813, quoting Mo. Rev. Stat. § 290.250 (1994). Section 107.170.2 of the Missouri statutes directs public agencies to require contractors to provide performance bonds that include conditions for payment for "labor performed in such work whether by subcontractor or otherwise." *Eurostyle*, 998 S.W.2d at 812. Unlike the Missouri statute, our Act neither requires the performance bond to include workers of the subcontractor nor provides a remedy for the general contractor when its subcontractor fails to comply with the provisions of the Act.

In *Mohr v. J. Pease Constructions Co.*, the United States District Court for the Northern District of Illinois held that a contractor was responsible for the compliance by its subcontractor with the provisions of the federal prevailing wage act, known as the Davis-Bacon Act. 40 U.S.C. § 276(a) (2000), subsequently revised 40 U.S.C. § 3141. *Mohr*, No. 92 C 8342. The court in *Mohr* based its decision on language in regulation 5.5(a)(6), which states that "the prime contractor shall be responsible for the compliance by any subcontractor or lower tier subcontractor with all the contract clauses in 29 C.F.R. § 5.5." 29 C.F.R. § 5.5(a)(6) (2004); *Mohr*, No. 92 C 8342. The first clause referenced by regulation 5.5(a)(6) requires the payment of prevailing wages as determined by the Secretary of Labor. 29 C.F.R. § 5.5(a)(1) (2004); *Mohr*, No. 92 C 8342. The court in *Sheridan* similarly held that a general contractor was liable for a subcontractor's violations of the Davis-Bacon Act based on the specific language contained therein. *Sheridan*, 28 WH Cases 1409.

■ The Illinois Prevailing Wage Act, in contrast to the Davis-

Bacon Act, does not incorporate language explicitly imposing liability on a general contractor for failure of the subcontractor to pay the prevailing wage and has never been interpreted by any body as implying such a duty. 820 ILCS 130/1 *et seq.* (West 1998). Neither does the Act contain remedies or a mechanism through which a contract may compel a subcontractor to pay the prevailing wage pursuant to the Act. 820 ILCS 130/1 *et seq.* (West 1998). The language of the various federal and state statues relating to prevailing wage rates is strikingly different from and broader than that of our Act and, therefore, is of little instructive value. *Sparks & Weiwel Construction Co. v. Martin*, 250 Ill. App. 3d 955, 966, 620 N.E.2d 533 (1993). In our view, had the legislature intended to impose liability on a general contractor for a subcontractor's violations, it could have easily done so by explicitly providing for such liability in the Act.

Other state jurisdictions and the federal government have prevailing wage laws that explicitly impose liability on a general contractor under the circumstances that have arisen in the case before us. If it intended to do the same, our legislature could have simply fashioned our Act after the language in the Davis-Bacon Act or included some indicia of its intent to impose liability on a general contractor. It .did not so provide. As such, we must, regardless of our opinion regarding the desirability of the results surrounding the operation of the statute, construe the statute as it is written. *DeWig*, 281 Ill. App. 3d at 143. Our construction of the Act compels us to conclude that defendant, as a general contractor, cannot be held liable for underpayment of the prevailing wages to a bankrupt subcontractor's employees.

Because we find that the Act does not impose liability on defendant here, we need not address the issue of preemption of the Act by ERISA. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

CAHILL, P.J., and GORDON, J., concur.