No. 3-09-0006

_____

Filed June 9, 2010-CORRECTION

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| THE PEOPLE ex rel. THE | ) | Appeal from the Circuit Court |
| DEPARTMENT OF LABOR, | ) | of the 14th Judicial Circuit, |
| | ) | Rock Island County, Illinois, |
| Plaintiff-Appellant, | ) | |
| | ) | No. 08-L-57 |
| v. | ) | |
| | ) | |
| SACKVILLE CONSTRUCTION, INC., | ) | Honorable |
| | ) | F. Michael Meersman, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the opinion of the court:
_____


The Department of Labor, filed a complaint against defendant subcontractor Sackville Construction, Inc. (Sackville), alleging that it violated the Prevailing Wage Act (Act) (820 ILCS 130/1 et seq. (West 2006)).  The trial court granted summary judgment to defendant, finding that it was unfair to require Sackville to pay the prevailing wage without adequate notice that the project was covered by the statute.  We reverse and remand for further proceedings.

In February 2006, private developer Rock Island Industrial Partners (RIIP) entered into a contract with Hy-Brand Contractors (Hy-Brand) to build a 45,000-square-foot industrial complex on a

vacant lot in downtown Rock Island (the project). Ten days later, RIIP signed a contract with the City of Rock Island (City) to construct the project. Under the terms of the agreement, RIIP agreed to invest $1.5 million in the project. In return, the City conveyed title of the project site to RIIP in consideration of $1. The City also agreed to contribute $150,000 "for use in the project." The funds were to be used for site construction and dispersed in two equal payments, one when the building permit issued and another when the certificate of occupancy issued. The City also agreed to pay up to $57,000 for the cost of site clearance and demolition.

In March 2006, Hy-Brand entered into an oral subcontract with Sackville to provide laborers for the project. Hy-Brand did not inform Sackville that the City had contributed funds to the project or that the project was covered by the Prevailing Wage Act.

During construction, the Department of Labor received a complaint that Sackville had failed to pay its laborers the correct wage. The Department conducted an investigation and determined that the construction project constituted a public works project subject to the Prevailing Wage Act and that Sackville's employees had not been paid the prevailing wage. The Department calculated an underpayment of $19,189.39 and demanded back wages from the subcontractor. Sackville refused to pay its workers the prevailing wage.

In December 2007, the Department filed a complaint against Sackville, alleging a violation of the Act based on Sackville's failure to pay its laborers the prevailing wage for their work. The Department sought back wages, plus penalties.

Sackville filed a motion for summary judgment, claiming that the Act did not apply to the project because RIIP was not a public body; thus, it was not required to pay the prevailing wage. Sackville argued that the City served only as a "financing conduit" and that the project was not actually funded by the City.

The Department filed a cross-motion for summary judgment, arguing that RIIP met the requirements of a public body under the Act because it received public funds from the City for the project. The Department further maintained that because the Act applied to both contractors and subcontractors, Sackville owed its workers the prevailing wage and was required to pay a 20% penalty.

The trial court entered an order granting summary judgment in favor of Sackville on the basis that it had no knowledge of the agreement between the City and RIIP. The court found that public funds were expended in support of the project and that the Act applied, but concluded that it was "unfair to require payment of prevailing wages when [Sackville] had no reason to believe the project was covered by the Prevailing Wage Act."

                              STANDARD OF REVIEW

We review de novo a trial court's grant of summary judgment.

3

Murray v. Chicago Youth Center, 224 Ill. 2d 213 (2007). Summary judgment is appropriate where the pleadings, depositions and affidavits on file, viewed in a light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Murray, 224 Ill. 2d at 228.

## ANALYSIS

### I. Prevailing Wage Act

The purpose of the Prevailing Wage Act is to encourage the efficient and expeditious completion of public works by public bodies by ensuring that workers receive a decent wage. Opportunity Center of Southeastern Illinois, Inc. v. Bernardi, 204 Ill. App. 3d 945, 949-50 (1990). Section 1 of the Act states, in relevant part:

> "It is the policy of the State of Illinois that a wage of no less than the general prevailing hourly rate as paid for work of a similar character in the locality in which the work is performed, shall be paid to all laborers, workers and mechanics employed by or on behalf of any and all public bodies engaged in public works." 820 ILCS 130/1 (West 2006).

The primary rule of statutory interpretation and construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. Maloney v. Bower, 113 Ill. 2d 473 (1986). In

4

interpreting a statute, courts must give the legislative language its plain and ordinary meaning. Opportunity Center, 204 Ill. App. 3d 945. If the language of the statute is plain, clear and unambiguous, it must prevail and will be given effect by the courts without resorting to other aids for construction. Village of Buffalo v. Illinois Commerce Comm'n, 180 Ill. App. 3d 591 (1989). Each word, clause and sentence of a statute should be given reasonable meaning and not rendered superfluous. Brucker v. Mercola, 227 Ill. 2d 502 (2007). Courts must not read into statute exceptions, limitation or conditions that the legislature did not intend. People v. Roake, 334 Ill. App. 3d 504 (2002).

However, the proper interpretation of a statute and determination of legislative intent cannot always be based upon language alone. Where a statute is ambiguous and the legislative intent cannot be ascertained from the plain and ordinary meaning of its language, then the court is guided by the rules of statutory construction and extrinsic aids. Rigney v. Edgar, 135 Ill. App. 3d 893 (1985). Generally, the interpretation of a statute must be grounded on the nature and object of the statute as well as the consequences which would result from construing it one way or another. Legislative intent may be ascertained from the reason and necessity for the act, the evils sought to be remedied and the objects and purposes sought to be obtained. In re Marriage of Antonich, 148 Ill. App. 3d 575 (1986).

5

When a statute is capable of more than one reasonable interpretation, the statute will be deemed ambiguous, and the court may consider extrinsic aids to construction, such as legislative history. People v. Collins, 214 Ill. 2d 206 (2005). An amendment to a statute is an appropriate source for determining the original legislative intent of a statute. Where the statute is amended soon after questions have arisen regarding its interpretation, it is logical and reasonable to regard the amendment as a legislative interpretation of the original statute. People v. Badoud, 122 Ill. 2d 50 (1988).

In this case, the Department contends that under the Prevailing Wage Act, (1) RIIP constitutes a "public body" because the project was supported by public funds, (2) the project qualifies as a "public work" even though it was not financed through one of the enumerated statutes, and (3) notice was not essential to find Sackville liable.

## II. Public Body

Section 2 of the Act defines a "public body" as "the State or any officer, board or commission of the State or any political subdivision or department thereof, or any institution supported in whole or in part by public funds." 820 ILCS 130/2 (West 2006). The statutory language of section 2 is clear and unambiguous. A public body is any institution supported in whole *or in part* by public funds. The terms used in the definition are broad and are

6

not limited to institutions wholly supported by public funds.

Sackville argues that the definition of a public body should not be extended to engulf a private entity that operates independently of public funding. However, we refuse to read into the statute exceptions or limitations that the legislature did not intend. Under a plain reading of the statute, RIIP's status as a private developer does not prevent it from being classified as a "public body" under the Act. See People ex rel. Bernardi v. Illini Community Hospital, 163 Ill. App. 3d 987 (1987) (although not-for-profit nonsectarian hospital is not a public hospital for general purposes, receipt of public tax funds qualified hospital as a public body under Prevailing Wage Act).

In this case, and for this purpose, RIIP was a public body because it was supported in part by public funds from the City. Those public funds constituted 10% of RIIP's development and construction costs. Additionally, RIIP received public funds to demolish and clear the site. It was also publicly supported by the City's agreement to deed the land to the developer for the nominal consideration of $1. The parties do not dispute that the financial support was significant. For these reasons, RIIP qualified as a public body under the Prevailing Wage Act.

### III. Public Works

We must next consider whether RIIP's industrial construction project is a "public works" project within the meaning of the Act.

Section 2 of the Act, in effect at the time of the project, states:

"'Public works' means all fixed works constructed by any public body, other than work done directly by any public utility company, whether or not done under public supervision or direction, or paid for wholly or in part out of public funds. 'Public works' as defined herein includes all projects financed in whole or in part with bonds issued under the Industrial Project Revenue Bond Act (Article 11, Division 74 of the Illinois Municipal Code), the Industrial Building Revenue Bond Act, the Illinois Finance Authority Act, the Illinois Sports Facilities Authority Act, or the Build Illinois Bond Act, *** loans or other funds made available pursuant to the Build Illinois Act, 'Public Works' also includes all projects financed in whole or in part with funds from the Fund for Illinois' Future under Section 6z-47 of the State Finance Act, funds for school construction under Section 5 of the General Obligation Bond Act, funds authorized under Section 3 of the School Construction Bond Act, funds for school infrastructure under Section 6z-45 of the State Finance Act, and funds for transportation purposes under Section 4 of the General Obligation Bond Act. 'Public works' also includes all

8

projects financed in whole or in part with funds from the Department of Commerce and Economic Opportunity under the Illinois Renewable Fuels Development Program Act for which there is no project labor agreement. 'Public works' also includes all projects at leased facility property used for airport purposes under Section 35 of the Local Government Facility Lease Act." 820 ILCS 130/2 (West 2006).

The question before us is whether a construction project contracted by a nongovernmental entity that does not receive funds from one of the listed financing statutes qualifies as a public work.

Sackville argues that a fixed work construction project undertaken by a private entity must be funded solely by one of the named financing statutes listed in section 2 to qualify as a "public works" project. The Department argues that the enumerated statutes are not exhaustive but are examples of projects that would be classified as public works. The Department maintains that its argument is supported by the legislative history of Public Act 96-0058 (Pub. Act 96-0058, eff. January 1, 2010 (amending 820 ILCS 130/2 (West 2006))), which clarifies that the Act was not limited to the projects listed in section 2.

Generally, the enumeration of specific items implies that the legislature intended to exclude all others. Copley Press, Inc. v. Administrative Office of the Courts, 271 Ill. App. 3d 548 (1995).

9

However, this rule of statutory construction is subordinate to the primary rule that the intent of the legislature governs statutory interpretation. "Thus, it can be overcome by a strong indication of contrary legislative intent or policy." In re Detention of Lieberman, 201 Ill. 2d 300, 319 (2002) quoting 2A N. Singer, Sutherland on Statutory Construction §47.23, at 315 (6th ed. 2000).

An amendment to a statute is an appropriate source for determining the original legislative intent of a statute. People v. Parker, 123 Ill. 2d 204 (1988). Although a statutory amendment is presumed to have been intended to change the law, the legislative history may indicate that the amendment was intended instead as a clarification. Parker, 123 Ill. 2d at 211-12. Where the statute is amended soon after questions have arisen regarding its interpretation, it is logical and reasonable to regard the amendment as a legislative interpretation of the original statute. Badoud, 122 Ill. 2d at 56.

The plain language of the first sentence defines public works and does not reference the list of statutes contained in the sentences that follow. The initial sentence characterizes "public works" as "all fixed works constructed by any public body." 820 ILCS 130/2 (West 2006). It is undisputed that the project in this case, real estate construction, is a fixed work within the meaning of the Act. See Opportunity Center, 204 Ill. App. 3d at 950-51 (real estate construction is a fixed work). And, as we have

10

determined, RIIP is a public body.  The project meets the definition of a public work.

This definition of a public work is further buttressed by the subsequent amendment of section 2.  See <u>Lieberman</u>, 201 Ill. 2d at 322-23 (where legislative history indicates that an amendment is intended as a clarification of existing law, it may be used to interpret the original act).  In April of 2009, the General Assembly amended the second sentence of the "public works" definition to read: "'Public works' as defined herein includes all projects financed in whole or in part with bonds, grants, loans, or other funds made available through the State or any of its political subdivisions, including but not limited to:"  Pub. Act 96-0058, eff. January 1, 2010 (amending 820 ILCS 130/2 (West 2006)).

The legislative debates surrounding the passage of this bill indicate that the General Assembly perceived a need to clarify, rather than alter, the application of the Prevailing Wage Act.  In both House and Senate debates, members sponsoring the bill stated that the amendment was a "clarification," not a change or an expansion.  96th Ill. Gen. Assem., House Proceedings, April 28, 2009, at 27 (statement of Representative Miller); 96th Ill. Gen. Assem., Senate Proceedings, April 2, 2009 (statement of Senator Forby).  Representative Miller explained that the amendment would not have any new effect and was intended only to provide "clarity

11

that a project that receives public dollars does have to pay a prevailing wage." 96th Ill. Gen. Assem., House Proceedings, April 28, 2009, at 27 (statement of Representative Miller). Similarly, Senator Forby stated that "this bill is a clarification bill. It's not expanding prevailing wages; all this does is get the clarification out to people that bids on jobs knows [sic] that this job is a prevailing wage job[;] that might save the contractor a lot of money down the road." 96th Ill. Gen. Assem., Senate Proceedings, April 2, 2009 (statement of Senator Forby). Senator Althoff added that "[i]t actually is clarifying a practice that is already in existence." 96th Ill. Gen. Assem., Senate Proceedings, April 2, 2009 (statement of Senator Althoff). Legislative history clarifies that the Act was intended to apply to projects paid in part by public funds regardless of the nature or statutory source of those funds.

The statute's plain language indicates that the Act applies to all fixed works constructed by any public body paid for in whole or in part by public funds. The pre-amended version of section 2 does not limit the project in this case from being a public work. The legislative history of the 2010 amendment supports that conclusion. Accordingly, we find the Prevailing Wage Act applied to the construction project undertaken by RIIP.

IV. Notice

Finally, the Department contends that notice to Sackville of

12

the prevailing wage contract was not required.

The Act provides that "a wage of no less than the general prevailing hourly rate as paid for work of a similar character in the locality in which the work is performed, shall be paid to all laborers, workers and mechanics" employed by all public bodies. 820 ILCS 130/1 (West 2006). Section 4(a) states that a subcontractor's obligation to pay the prevailing wage is

"mandatory upon the contractor to whom the contract is awarded and upon any subcontractor under him *** to pay not less than the specified rates to all laborers, workers and mechanics employed by them in the execution of the contract ***. *** The public body awarding the contract shall cause to be inserted in the project specifications and the contract a stipulation to the effect that not less than the prevailing rate of wages as found by the public body or Department of Labor *** shall be paid ***." 820 ILCS 130/4(a) (West 2006).

Section 4(a) indicates the legislature intended that subcontractors like Sackville remain liable for back wages. The term "notice" does not appear in section 2 or section 4(a). The legislature's intent is evident from its use of mandatory terms such as "shall be paid," "shall be mandatory" and "upon any subcontractor." The Act dictates that a subcontractor is obligated to pay the prevailing hourly rate to its workers as determined by

13

the Department; the Department is not required to notify subcontractors that the Act applies to their project. Indeed, the plain language of sections 1 and 4 requires payment of back wages at the prevailing rate regardless of any notice to the subcontractor that the Act applies.

Although section 4(a) requires a public body to include the prevailing rate in the project specifications and the contract, the statute does not place a condition precedent on the contractor's or subcontractor's duty to pay the proper wage. The contractors and subcontractors are still liable to the laborers to pay the prevailing wage. To read a notice requirement into section 4 would defeat the purpose and intent of the Act and unfairly punish those it was meant to protect, the laborers. See Brandt Construction Co. v. Ludwig, 376 Ill. App. 3d 94 (2007); see also 820 ILCS 130/1 (West 2006) (Act's intent is to provide laborers on public works a decent wage). Accordingly, we find that Sackville's lack of notice of the application of the Act does not relieve Sackville from its obligation to pay its workers the prevailing hourly rate.

V.  Penalties

Since we have found that Sackville did not pay the prevailing wage, it is liable to pay penalties under the Act. 820 ILCS 130/11 (West 2006) (contractors and subcontractors "liable to [Department] for 20% of such underpayments"). We therefore reverse and remand to the circuit court to calculate any penalties owed under the

14

statute and enter judgment accordingly.

## CONCLUSION

The judgment of the circuit court of Rock Island County is reversed, and the cause is remanded with instructions.

Reversed and remanded with instructions.

CARTER and WRIGHT, JJ., concur.