# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People ex rel. Department of Labor v. Valdivia*, 2011 IL App (2d) 100998

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE *ex rel.* THE DEPARTMENT OF LABOR, Plaintiff, v. PEDRO VALDIVIA, Individually and d/b/a V&A Landscaping, Defendant and Third-Party Plaintiff-Appellant (Pasqualino Divito, Individually and d/b/a Patnick Construction, Inc., Third-Party Defendant-Appellee). |
| District & No. | Second District<br>Docket No. 2-10-0998 |
| Filed | August 16, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging that defendant subcontractor violated the Prevailing Wage Act, the trial court properly dismissed the subcontractor's third-party complaint against the general contractor seeking contribution for any judgment entered against it based on the allegation that the general contractor failed to comply with the notice requirements of the Act. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 09-L-1345; the Hon. John T. Elsner, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Lance C. Ziebell, of Lavelle Law, Ltd., of Palatine, for appellant.

David N. Michael and Joseph P. Bonavita, both of Gould & Ratner LLP, of Chicago, for appellee.

Panel

JUSTICE ZENOFF delivered the judgment of the court, with opinion.

Justices Hutchinson and Birkett concurred in the judgment and opinion.

## OPINION

¶ 1    The Department of Labor (Department) filed a complaint against defendant, subcontractor Pedro Valdivia, individually and doing business as V&A Landscaping (Valdivia), alleging that he violated the Prevailing Wage Act (Prevailing Wage Act or Act) (820 ILCS 130/1 *et seq.* (West 2004)). Valdivia filed a two-count third-party complaint against general contractor Pasqualino Divito, individually and doing business as Patnick Construction, Inc. (Divito), seeking the full amount of any judgment entered against Valdivia and in favor of the Department. Valdivia appeals from the trial court's dismissal of the second count. For the following reasons, we affirm.

¶ 2                              I. BACKGROUND

¶ 3    In June 2004, the Village of Woodridge, Illinois, accepted Divito's bid on its "Suburban Estates Water Main Improvements" project. The bid included a cost of $85,638 for "sodding, special." In September 2004, Divito entered into an oral agreement with Valdivia in which Valdivia would install the topsoil and sod for the project for $44,493.75. Valdivia completed his work on the project in November 2004. Valdivia paid his employees his standard wage and overtime rates. Divito paid Valdivia the agreed amount of $44,493.75.

¶ 4    On February 4, 2005, the Department sent Valdivia a letter stating that its audit showed that he failed to pay the prevailing wage to his employees on the project and demanding payment within 10 days on behalf of those employees. Valdivia's attorney responded with letters to both the Department and Divito, disclaiming any liability under the Prevailing Wage Act and asserting that Divito was liable for the back wages due to his failure to inform Valdivia of the Act's applicability to the project and his failure to post the prevailing wage rates at the jobsite.

¶ 5    On March 15, 2005, the Department sent Divito a letter stating that it would hold him responsible for Valdivia's failure to pay the back wages owed to Valdivia's employees. Divito's attorney responded by letter to the Department disclaiming any liability under the Prevailing Wage Act. On March 29, the Department sent Divito a letter indicating that it had

a right to pursue a bond claim on his contractor bond for the project. The Department gave Divito 10 days to respond. Thereafter, the Department made no more contact with Divito.

¶ 6    On October 23, 2009, the Department filed against Valdivia a complaint alleging that Valdivia violated the Prevailing Wage Act by failing to pay the prevailing wage to his employees on the project. It sought payment of back wages of $78,185.55; a statutory penalty of $15,637.11; and statutory punitive damages of $14,386.04.

¶ 7    In addition to filing an answer and affirmative defense, Valdivia filed a two-count, third-party complaint against Divito, alleging that Divito violated section 4 of the Prevailing Wage Act by failing to notify Valdivia that the Act applied and by failing to post the prevailing wage rates on the jobsite (820 ILCS 130/4 (West 2004)). Count I, entitled "Violation of the Illinois Prevailing Wage Act," alleged that Divito's failure to comply with the Act's notice requirement subjected Valdivia to suit by the Department. Count II, entitled "Fraudulent Concealment," alleged that Divito knew that the Act was applicable to the project but did not notify Valdivia because Divito intended to induce Valdivia to enter into the landscaping contract for a price less than he would have agreed to had he known that he would be required to pay the prevailing wage. Both counts sought as relief Divito's payment of the full amount of any judgment entered against Valdivia in the underlying suit.

¶ 8    Divito filed a combined motion to dismiss the third-party complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2010)). The trial court granted the motion with respect to count I, dismissing it with prejudice. It is not at issue in this appeal. The court denied Divito's motion with respect to count II. The court stated that count II, though entitled "Fraudulent Concealment," was essentially a claim for contribution under the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/1 *et seq.* (West 2010)). The court granted Divito leave to file a motion to reconsider or to provide supplemental authority as to count II. Divito filed a motion to reconsider; Valdivia responded; and Divito replied. On August 19, 2010, the court heard argument and dismissed count II with prejudice. On September 2, the court entered an order modifying its August 19 order to include a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). Valdivia timely appealed.

¶ 9                                    II. ANALYSIS

¶ 10    Valdivia argues that he stated a claim for contribution in count II of his third-party complaint and that the trial court erred in dismissing it. After construing count II as a claim for contribution, the trial court dismissed it for failure to state a claim. A cause of action should not be dismissed for failure to state a cause of action "unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief." *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 161 (2009) (reviewing dismissal pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2010))). We take all well-pleaded facts as true and draw all reasonable inferences in favor of the nonmoving party. *Tedrick*, 235 Ill. 2d at 161. Our review is *de novo*. *Tedrick*, 235 Ill. 2d at 161.

¶ 11    Section 2 of the Contribution Act provides for a right of contribution "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property."

740 ILCS 100/2(a) (West 2010). The same-injury requirement refers to "that which is incurred by the plaintiff, as opposed to any injury suffered by the parties seeking contribution." *People v. Brockman*, 143 Ill. 2d 351, 371 (1991). Thus, to state a claim under the Contribution Act, a party must show that both he and the party from whom he seeks contribution are subject to liability in tort for the injury suffered by the plaintiff in the underlying suit. *Vroegh v. J&M Forklift*, 165 Ill. 2d 523, 529 (1995). Here, the underlying plaintiffs were Valdivia's employees. See 820 ILCS 130/11 (West 2004) (provision of the Prevailing Wage Act stating that the Department has a right of action on behalf of any person with a right of action under this section). The injury they suffered was underpayment of wages. Therefore, the relevant inquiry is whether Valdivia showed that both he and Divito were subject to liability in tort for the underpayment of wages to Valdivia's employees.

¶ 12 "Tort law *** applies in situations where society recognizes a duty to exist wholly apart from any contractual undertaking. Tort obligations are general obligations that impose liability when a person negligently, carelessly or purposely causes injury to others." *Collins v. Reynard*, 154 Ill. 2d 48, 51 (1992). A tort duty can derive either from the common law or from statute. *Harnischfeger Corp. v. Gleason Crane Rentals, Inc.*, 223 Ill. App. 3d 444, 452 (1991). A statute may expressly create a tort duty. *Rommel v. Illinois State Toll Highway Authority*, 405 Ill. App. 3d 1124, 1128 (2010). Or, a tort duty may be inferred from a statute intended to protect human life or property. *Rommel*, 405 Ill. App. 3d at 1128; see, *e.g.*, *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 326 (1995) (holding that the Illinois Domestic Violence Act of 1986 (750 ILCS 60/1 *et seq.* (West 1992)) imposed a duty on law enforcement to take reasonable steps to assist a person protected under that act); *Doyle v. Rhodes*, 101 Ill. 2d 1, 17 (1984) (holding that violation of a "safety statute" such as the Road Construction Injuries Act (Ill. Rev. Stat. 1981, ch. 121, ¶ 314 *et seq.*) can subject a party to liability in tort sufficient to satisfy the Contribution Act). But *cf. Jodelis v. Harris*, 118 Ill. 2d 482, 487 (1987) (holding that the liability created by the Illinois Dramshop Act (Ill. Rev. Stat. 1979, ch. 43, ¶ 135) was " 'exclusive, *sui generis* nontort liability' " that did not satisfy the requirement of the Illinois Contribution Act (quoting *Hopkins v. Powers*, 113 Ill. 2d 206, 211 (1986))).

¶ 13 Valdivia argues that the Prevailing Wage Act imposes a duty on general contractors and that violation of the Act's requirements subjects a general contractor to liability in tort. The Act requires both general contractors and subcontractors on public-works projects to pay the prevailing wage to their employees. 820 ILCS 130/4 (West 2004). The policy behind the Act is to ensure that workers on public-works projects are paid the prevailing wage for their work and that public-works projects will therefore be completed efficiently and expeditiously. 820 ILCS 130/1 (West 2004); *People ex rel. Department of Labor v. Sackville Construction, Inc.*, 402 Ill. App. 3d 195, 198 (2010). Section 11 of the Act creates a right of action in those underpaid employees included within its scope, allowing them to claim back wages and punitive damages. 820 ILCS 130/11 (West 2004). The Act does not expressly create a tort duty, and a plain reading of the Act indicates that it was not intended to protect human life or property. Therefore, the Act cannot create a duty in tort. See *Rommel*, 405 Ill. App. 3d at 1129 (holding that the Toll Highway Act (605 ILCS 10/1 *et seq.* (West 2008)) was a mechanism to finance construction and maintenance of highways and did not create a duty

to prevent crossover collisions because it was not designed to protect human life or property). Accordingly, even if Divito violated the Prevailing Wage Act, he was not subject to liability in tort within the meaning of the Contribution Act, and the trial court did not err in dismissing count II of the third-party complaint. See *Vroegh*, 165 Ill. 2d at 531 (holding that, because the contribution defendant had no duty to the underlying plaintiff, it was not subject to liability in tort within the meaning of the Contribution Act).

¶ 14 Valdivia specifically argues that section 4 of the Prevailing Wage Act imposed duties on Divito to notify Valdivia of the Act's applicability to the project and to post the prevailing wage rates at the jobsite. Valdivia asserts that Divito's violations of section 4's requirements were the cause of Valdivia's failure to pay his employees the prevailing wage, thus causing the injury suffered by Valdivia's employees. According to Valdivia, therefore, Divito's failure to comply with the Act rendered Divito liable in tort to Valdivia's employees.

¶ 15 Divito initially responds that Valdivia forfeited his argument that Divito owed a duty to Valdivia's employees, because he neither alleged such a duty in his third-party complaint nor argued to the trial court that such a duty existed. See *In re Marriage of Holthaus*, 387 Ill. App. 3d 367, 377 (2008) (arguments not raised in the trial court are forfeited on review). We agree that Valdivia did not allege in count II that Divito owed a duty to Valdivia's employees. However, the trial court *sua sponte* construed count II for fraudulent concealment as a claim for contribution, and the parties briefed and argued the issue. In his written response to Divito's motion to reconsider, Valdivia argued that Divito's violations of the Prevailing Wage Act subjected Divito to liability in tort to both the State and Valdivia's employees. Under the unique procedural history here, Valdivia did not forfeit his argument that Divito owed a duty to Valdivia's employees, because the issue was thoroughly addressed by the parties and the court below. See *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 453 (2007) (one purpose of the forfeiture rule is to prevent prejudicing a party who had no opportunity to argue the issue before the trial court).

¶ 16 Divito further responds that the posting requirement was not in effect in October and November 2004, when the underlying plaintiffs were underpaid. The 2004 version of the Prevailing Wage Act included two section 4s. One reflected amendment by Public Acts 93-15, § 905 (eff. June 11, 2003) and 93-16, § 5 (eff. Jan. 1, 2004), which were identical and added the posting requirement. The other reflected amendment by Public Act 93-38, § 5 (eff. June 1, 2004), which added the notice requirement. The language of section 5 of Public Act 93-38 did not include the language adding the posting requirement. However, because the notice and posting requirements do not irreconcilably conflict, we give effect to both. See 5 ILCS 70/6 (West 2010) ("Two or more Acts which relate to same subject matter and which are enacted by the same General Assembly shall be construed together in such manner as to give full effect to each Act except in case of an irreconcilable conflict.").

¶ 17 We now address Valdivia's argument that failure to comply with the notice requirement of section 4 of the Prevailing Wage Act subjected Divito to liability in tort to Valdivia's employees because the lack of notice caused Valdivia not to pay the prevailing wage. Section 4 of the Act requires both general contractors and subcontractors to pay the prevailing wage to all those "employed by them" on a public-works project. 820 ILCS 130/4 (West 2004). Section 4 additionally requires a general contractor to "insert into each subcontract *** a

written stipulation to the effect that not less than the prevailing rate of wages shall be paid to all *** performing work under the contract." Pub. Act 93-38, § 5 (eff. June 1, 2004). However, notice is not a condition precedent to the obligation to pay the prevailing wage. See *Sackville Construction*, 402 Ill. App. 3d at 203 (holding that the failure of a public body to provide notice to a general contractor does not alleviate the obligation of the general contractor or its subcontractors to pay the prevailing wage to their employees). Neither is a general contractor a guarantor of payment for a subcontractor's employees in the event that the subcontractor fails to pay the prevailing wage. *Cement Masons Pension Fund v. William A. Randolph, Inc.*, 358 Ill. App. 3d 638, 645-46 (2005).

¶ 18    In *Cement Masons*, the plaintiffs were fringe-benefit-funds administrators who sued defendant, the general contractor on a public-works project, for its subcontractor's failure to pay the prevailing wage. *Cement Masons*, 358 Ill. App. 3d at 639. The appellate court declined to expand the plain meaning of the Prevailing Wage Act and held that the Act did not allow a cause of action against a general contractor for its subcontractor's violation. *Cement Masons*, 358 Ill. App. 3d at 646. This holding was the basis of the trial court's dismissal here of count I of the third-party complaint, which alleged Divito's violation of the Act. Although Valdivia does not appeal from the dismissal of count I, he makes much of the fact that *Cement Masons* was decided in June 2005, after the conduct at issue here occurred (in the fall of 2004). Nonetheless, the relevant language of the Act interpreted by the court in *Cement Masons* was the same as that in effect in 2004; thus, *Cement Masons* is apposite. We agree with Valdivia that *Cement Masons* does not directly address the issue presented here–the viability of a contribution claim. However, it is persuasive for the proposition for which we cite it–that a general contractor is not a guarantor of payment for its subcontractor's employees.

¶ 19    Under the Prevailing Wage Act, Valdivia's employees were entitled to payment of the prevailing wage from Valdivia, regardless of Divito's notice to Valdivia. Accordingly, section 4's notice requirement could not have created any duty owed by Divito to Valdivia's employees, let alone one sounding in tort. See *Sackville Construction*, 402 Ill. App. 3d at 203 (analyzing language from the 2006 version of the Act, which was identical to that in the 2004 version, and holding that "the plain language of sections 1 and 4 requires payment of back wages at the prevailing rate regardless of any notice to the subcontractor that the Act applies").

¶ 20    Valdivia also maintains that section 4's requirement that a general contractor post the prevailing wages for the various crafts at the jobsite is for the benefit of all of the workers on a public-works project and, therefore, it created a duty owed by Divito to Valdivia's employees. Section 4 requires a general contractor to "post, at a location on the project site of the public works that is easily accessible to the workers engaged on the project, the prevailing wage rates for each craft or type of worker." Pub. Act 93-16, § 5 (eff. Jan. 1, 2004). Although the posting requirement conceivably is for the benefit of the employees, the required posting merely informs the employees of what the prevailing wage rates are, not that they are entitled to receive them. Moreover, as discussed above, the intent to ensure that workers employed in public works are paid the prevailing wage simply does not sound in tort, because it has nothing to do with the prevention of personal injury or property damage.

See *Rommel*, 405 Ill. App. 3d at 1129 (holding that a statute not designed to protect human life or property did not create a duty).

¶ 21　In support of his proposition that the posting requirement created a duty, Valdivia relies solely on *Brockman*. In *Brockman*, the State filed a complaint against the owner-operators of a landfill for violations of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1979, Ch. 111½, ¶ 1001 *et seq.*). *Brockman*, 143 Ill. 2d at 358. The owner-operators filed a third-party complaint against their customers–various generators and transporters of waste deposited at the landfill. *Brockman*, 143 Ill. 2d at 359. The trial court dismissed the third-party complaint with prejudice, and the owner-operators appealed. *Brockman*, 143 Ill. 2d at 360. Ultimately, the supreme court held that violation of the Environmental Protection Act could constitute liability in tort under the Contribution Act because, "[w]ithout question, third-party defendants had a duty not to contaminate the environment." *Brockman*, 143 Ill. 2d at 372-73.

¶ 22　The court's conclusion in *Brockman* that the Environmental Protection Act created a tort duty is consistent with the concept of a tort itself. *Brockman*, like the cases mentioned above in which courts found statutory tort duties, involved the legislature's intent to prevent personal injury or property damage, specifically to prevent injury to persons and harm to the environment from hazardous substances. See *Brockman*, 143 Ill. 2d at 375 (noting that the purpose of the Environmental Protection Act is to impose liability on those who create a situation harmful to the environment); 415 ILCS 5/2(a)(i) (West 2010) (stating the General Assembly's finding that "environmental damage seriously endangers the public health and welfare"). In contrast, the Prevailing Wage Act does not involve such concerns. Rather, the purpose of the Act is to ensure that workers on public-works projects are paid the prevailing wage. Accordingly, *Brockman* is inapposite.

¶ 23　Valdivia's argument that a recent amendment to the Prevailing Wage Act compels a different conclusion is not convincing. The Act was amended, effective January 1, 2010, to require a general contractor to pay the penalties that would otherwise be imposed on a subcontractor, if the general contractor failed to notify the subcontractor of the Act's applicability. 820 ILCS 130/4(b-2) (West 2010). Valdivia argues that this amendment, rather than changing the law, served to clarify the law as it existed at the relevant time here, thus supporting his right to contribution under the theory that general contractors have duties to notify and post. We first note that, as Valdivia acknowledges, the amended language makes clear that a general contractor's failure to notify "does not relieve the subcontractor of the duty to comply with the prevailing wage rate, nor of the obligation to pay any back wages." 820 ILCS 130/4(b-2) (West 2010). Even more significant here is that the amendment applies to violations of the notice requirement, not the posting requirement. As it is only the posting requirement that could possibly benefit Valdivia's employees, the amendment does not support the viability of Valdivia's contribution claim.

¶ 24　Valdivia finally argues that the equities compel the conclusion that he be permitted to seek contribution because otherwise Divito will be unjustly enriched and Valdivia will be unfairly burdened with the total cost of the back wages owed plus penalties. Contribution is based on principles of equity. *Doyle*, 101 Ill. 2d at 16. However, "[t]he equitable powers of a court may not be exercised to direct a remedy in contradiction to the plain requirements of

a statute." *601 West 81st Street Corp. v. City of Chicago*, 129 Ill. App. 3d 410, 418 (1984).

¶ 25    Valdivia's argument that Divito will be unjustly enriched if he is not subject to contribution is purely speculative. It is premised on the facts that Divito's bid to the Village included a cost of $85,638 for "sodding, special," while under his contract with Valdivia for sodding, he paid only $44,493.75. Superficially, these facts might suggest unfairness; indeed, the trial court stated that the equities favored Valdivia. Nonetheless, to the extent that the parties entered into a contract[1] for the $44,493.75 price, the theory of unjust enrichment really has no relevance. See *People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473, 497 (1992) (stating that, because the theory of unjust enrichment is based on a contract implied in law, it has no applicability where an actual contract exists). Moreover, Valdivia actually paid $19,474.91 in wages and is subject to an additional $78,185.55 in back wages. Thus, the total prevailing wage owed was $97,660.46–$12,000 more than the sodding cost listed in Divito's bid to the Village (and that does not include any cost for materials). Consequently, it would seem that other factors, about which we decline to speculate, figured into Divito's sodding cost in his bid, which consisted of 47 different items and totaled $653,829. We also disagree with Valdivia's argument that precluding a contribution claim in this type of situation allows general contractors to profit from their disregard for the notice provision. The Act provides that general contractors who violate its provisions are subject to being barred from public-works projects for two years. See 820 ILCS 130/11a (West 2004). Thus, any "profit" from a violation would be short-lived.

¶ 26    We are also not convinced that, absent a claim for contribution, Valdivia will be unfairly burdened with the total cost of the back wages owed plus penalties. Valdivia was statutorily obligated to pay the prevailing wage, regardless of notice of the Act's applicability. See *Sackville Construction*, 402 Ill. App. 3d at 203 (notice is not a condition precedent to the obligation to pay the prevailing wage). Valdivia's failure to comply with the Act subjected him to owing back wages and penalties. See *Sackville Construction*, 402 Ill. App. 3d at 203 (holding that, despite lack of notice, the subcontractor's failure to pay the prevailing wage subjected it to back wages and penalties under the Act). Even if we were to agree with the trial court's conclusion that the equities favored Valdivia, we cannot circumvent the clear mandate of the Contribution Act's requirement that both parties be subject to liability *in tort*. See *601 West 81st Street Corp.*, 129 Ill. App. 3d at 418 (court cannot use equity to contradict a statute's requirements). Any perceived unfairness must be rectified by the legislature. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 394 (1998) ("The responsibility for the justice or wisdom of legislation rests upon the legislature.").

¶ 27    Based on the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 28    Affirmed.

---

[1]Paragraph 7 of Valdivia's affirmative defense asserts that the parties "entered into an oral agreement." Paragraph 9 alleges that Valdivia performed all of his obligations "under said contract."