# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Central Laborers' Pension Fund v. Nicholas & Associates, Inc.*, 2011 IL App (2d) 100125

| | |
|---|---|
| Appellate Court Caption | CENTRAL LABORERS' PENSION FUND, NORTH CENTRAL ILLINOIS LABORERS' HEALTH AND WELFARE FUND, NORTHERN ILLINOIS ANNUITY FUND, ILLINOIS LABORERS' AND CONTRACTORS JOINT APPRENTICESHIP AND TRAINING FUND, MIDWEST REGION FOUNDATION FOR FAIR CONTRACTING, INC., NORTHERN ILLINOIS WELFARE FUND, INDUSTRY ADVANCEMENT FUND, LABORERS'-EMPLOYERS COOPERATION EDUCATION TRUST, VACATION FUND, MARKET PROMOTION FUND, ORGANIZATION FUND, and LABORERS' LOCAL 32, Plaintiffs-Appellants, v. NICHOLAS AND ASSOCIATES, INC., Defendants-Appellees (KMC Masonry, LLC, Defendant; The State of Illinois, Intervenor-Appellant).–LABORERS' PENSION FUND, LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds, Plaintiffs-Appellants, v. NICHOLAS AND ASSOCIATES, INC., and KANELAND SCHOOL DISTRICT No. 302, Defendants-Appellees (KMC Masonry, LLC, Defendant; The State of Illinois, Intervenor-Appellant). |
| District & No. | Second District<br>Docket Nos. 2-10-0125, 2-10-0191 cons. |
| Filed | September 2, 2011 |

| | |
|---|---|
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of plaintiff labor unions' pension and benefit funds' action to enforce mechanics lien claims for unpaid fringe benefit contributions on the ground that the preemption clause of the Employee Retirement Income Security Act was an affirmative matter compelling the involuntary dismissal of plaintiffs' claims was reversed, since ERISA does not preempt the Mechanics Lien Act. |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 09-CH-344; the Hon. Kurt P. Klein, and Appeal from the Circuit Court of Kane County, No. 09-CH-4038; the Hon. Alan W. Cargerman, Judges, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Paul Berks, Assistant Attorney General, of counsel), for appellant State of Illinois.<br><br>Karen I. Engelhardt and Josiah A. Groff, both of Allison, Slutsky & Kennedy, P.C., of Chicago, for appellants James S. Jorgensen, Laborers' Pension Fund, and Laborers' Welfare Fund of Health & Welfare Department.<br><br>John A. Wolters, of Cavanagh & O'Hara LLP, of Springfield, for other appellants.<br><br>Charles B. Lewis, Jeffrey L. Hamera, David I. Curkovic, and Richard P. Darke, all of Duane Morris LLP, of Chicago, for appellees. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices Schostok and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1    These consolidated appeals present the issue of whether the Mechanics Lien Act (770 ILCS 60/0.01 *et seq.* (West 2010)) is preempted by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 *et seq.* (2006)). In separate litigation involving the same general contractor and subcontractor on two construction projects, the circuit courts of De Kalb County and Kane County ruled that ERISA preemption is affirmative matter compelling the involuntary dismissals of plaintiffs' mechanic's lien claims, under section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2010)). We hold that ERISA does not preempt the Mechanics Lien Act, and therefore we reverse the involuntary dismissals of plaintiffs' mechanic's lien claims and remand the causes for further proceedings.

¶ 2                                    FACTS

¶ 3    Defendant Nicholas & Associates (Nicholas) signed contracts with Kaneland School District No. 302 (Kaneland School District) and De Kalb Community School District No. 428 (De Kalb School District) to serve as the general contractor for the construction of two new elementary schools. In turn, Nicholas hired defendant KMC Masonry, LLC (KMC), as a subcontractor to perform masonry work on both projects. KMC secured labor for the project by entering into collective bargaining agreements (CBAs) with plaintiffs Laborers' Local 32 and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity. The CBAs required KMC to make monetary contributions to the other plaintiffs, and we assume for purposes of analysis that those plaintiffs qualify as multiemployer benefit plans under ERISA (the funds). See 29 U.S.C. §§ 1002(3), (37)(A) (2006). By signing the CBAs, KMC also agreed to become a party to the various agreements and trust declarations that governed the funds. KMC allegedly breached the CBAs by failing to pay the mandatory contributions.

¶ 4    On May 6, 2009, plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and James S. Jorgensen, the administrator of those funds (Kane plaintiffs), sued KMC in the United States District Court for the Northern District of Illinois to recover the unpaid contributions. Specifically, the Kane plaintiffs brought an action under section 1145 of ERISA (29 U.S.C. § 1145 (2006)), which requires signatories to a CBA to "make contributions to a multiemployer plan *** in accordance with the terms and conditions of *** such agreement." On June 19, 2009, the district court entered a default judgment against KMC in the amount of $279,725, which purportedly included KMC's unpaid contributions to the funds, unpaid union dues, penalties, attorney fees, and costs, as required by section 1132(g) of ERISA. 29 U.S.C. § 1132(g) (2006).

¶ 5                         A. Appeal No. 2-10-0125 (De Kalb)

¶ 6    On August 21, 2009, plaintiffs Central Laborers' Pension Fund, North Central Illinois Laborers' Health and Welfare Fund, Northern Illinois Annuity Fund, Illinois Laborers' and

Contractors Joint Apprenticeship and Training Fund, Midwest Region Foundation for Fair Contracting, Inc., Northern Illinois Welfare Fund, Industry Advancement Fund, Laborers'-Employers Cooperation Education Trust, Vacation Fund, Market Promotion Fund, Organization Fund, and Laborers' Local 32 (De Kalb plaintiffs), filed in the circuit court of De Kalb County a complaint for an accounting on a mechanic's lien against Nicholas and KMC.

¶ 7     The complaint alleged that Nicholas contracted with the De Kalb School District to serve as the general contractor in building the Cortland Elementary School and that Nicholas hired KMC to perform masonry work on the Cortland project. The complaint alleged that KMC employees performed labor on the Cortland project from November 2008 through April 2009 and that the CBA required KMC to pay fringe benefits to the De Kalb plaintiffs for each hour worked. KMC allegedly breached the CBA by failing to pay the contributions. On July 19, 2009, the De Kalb plaintiffs gave Nicholas, KMC, and the De Kalb School District notice of a claim for a mechanic's lien for $130,613, representing the amount of the fringe benefit contributions that KMC had allegedly failed to make, as well as additional costs, damages, and attorney fees.

¶ 8     KMC did not respond to the complaint, but Nicholas filed a motion to dismiss under section 2-619 of the Code, arguing that the mechanic's lien claim was preempted by ERISA. On January 12, 2010, the circuit court of De Kalb County granted Nicholas's motion and dismissed the complaint on the ground of preemption. The court entered a written finding that, pursuant to Illinois Supreme Court Rule 304(a), there was no just cause to delay enforcement or appeal or both. See Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). The De Kalb plaintiffs filed a notice of appeal, and we docketed the matter under appeal No. 2-10-0125.

¶ 9                              B. Appeal No. 2-10-0191 (Kane)

¶ 10    On October 20, 2009, the Kane plaintiffs filed in the circuit court of Kane County a complaint for an accounting on their mechanic's lien against Nicholas, KMC, and Kaneland School District. The complaint alleged that, from February 2009 through May 2009, KMC's employees performed union work on the project under KMC's contract with Nicholas, but KMC failed to pay $131,504 into the funds as required by the CBA.

¶ 11    The complaint alleged that, on July 24, 2009, plaintiffs served Nicholas, KMC, and Kaneland School District with a notice of a lien claim on a public improvement (see 770 ILCS 60/23 (West 2010)) and a bond claim (see 30 ILCS 550/1, 2 (West 2010)). At the time of the notice, Kaneland School District allegedly still was in possession of all the amounts due under its contract with Nicholas, and before that time, no payment, voucher, or other evidence of indebtedness had been made. Therefore, the Kane plaintiffs alleged that the lien attached all of Kaneland School District's money, bonds, and warrants that it held for payment for the project.

¶ 12    The complaint sought (1) an accounting of the amounts owed to the funds, including interest and costs; (2) an order directing Nicholas to pay the amount due; and (3) the entry of a lien on all of Kaneland School District's money, bonds, and warrants that were due or would become due to Nicholas; and (4) an order directing Kaneland School District to pay

the amount due plus interest and costs.

¶ 13    As in the De Kalb County matter, KMC did not respond, but on December 4, 2009, Nicholas and Kaneland School District moved to dismiss the complaint under section 2-619(a)(9) of the Code on the ground that ERISA preemption is affirmative matter that defeats the Kane plaintiffs' claim under the Mechanics Lien Act. See 735 ILCS 5/2-619(a)(9) (West 2010). Citing *Construction & General Laborers' District Council v. James McHugh Construction*, 230 Ill. App. 3d 939 (1992), Nicholas and Kaneland School District argued that ERISA preemption bars any claim to compel a general contractor to make fringe benefit contributions for its subcontractor. Nicholas and Kaneland School District also submitted documentary evidence of the $279,725 default judgment entered against KMC in federal district court.

¶ 14    On February 9, 2010, the trial court dismissed the complaint with prejudice, based on ERISA preemption. The court directed Kaneland School District to release the money that had been held for plaintiffs' lien claim, but the court stayed the release for 30 days. Because the dismissal applied to Nicholas and Kaneland School District and not to KMC, the court entered a written finding that there was no just reason for delaying either enforcement or appeal or both. See Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). On February 23, 2010, the Kane plaintiffs filed a timely notice of appeal, and we docketed the matter under appeal No. 2-10-0191, which we consolidated with appeal No. 2-10-0125. On May 14, 2010, we granted the Attorney General leave to intervene in the consolidated appeals.

¶ 15                                    ANALYSIS

¶ 16    Plaintiffs and the Attorney General argue that ERISA does not preempt the Mechanics Lien Act. The standard governing these consolidated appeals is familiar. A dismissal pursuant to section 2-619 is reviewed *de novo*. *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 396 (2009). A motion to dismiss under section 2-619(a)(9) asserts that a plaintiff's claims against the defendant are "barred by other affirmative matter avoiding the legal effect of or defeating the claim[s]." 735 ILCS 5/2-619(a)(9) (West 2010); see also *Diocese of Dallas*, 234 Ill. 2d at 396. When reviewing an order granting dismissal on this basis, we may consider "all facts presented in the pleadings, affidavits, and depositions found in the record." *Diocese of Dallas*, 234 Ill. 2d at 396. "The pleadings and supporting documents must be interpreted in the light most favorable to the nonmoving party." *Diocese of Dallas*, 234 Ill. 2d at 396.

¶ 17    The purpose of the Mechanics Lien Act is to protect general contractors and subcontractors who are providing labor and materials for the benefit of an owner's property, by permitting them a lien on the property. *Crawford Supply Co. v. Schwartz*, 396 Ill. App. 3d 111, 119 (2009). Because the rights under the Mechanics Lien Act are in derogation of common law, the steps necessary to invoke those rights must be strictly construed. *Crawford Supply Co.*, 396 Ill. App. 3d at 119. However, once the contractor or subcontractor has strictly complied with the requirements and the lien has properly attached, then the Mechanics Lien Act should be liberally construed to accomplish its remedial purpose. *Crawford Supply Co.*, 396 Ill. App. 3d at 119.

¶ 18    Plaintiffs filed mechanic's liens under section 23(b) of the Mechanics Lien Act, which provides as follows:

"Any person who shall furnish labor, services, material, fixtures, apparatus or machinery, forms or form work to any contractor having a contract for public improvement for any county, township, school district, city, municipality, municipal corporation, or any other unit of local government in this State, shall have a lien for the value thereof on the money, bonds, or warrants due or to become due the contractor having a contract with such county, township, school district, municipality, municipal corporation, or any other unit of local government in this State under such contract. The lien shall attach only to that portion of the money, bonds, or warrants against which no voucher or other evidence of indebtedness has been issued and delivered to the contractor by or on behalf of the county, township, school district, city, municipality, municipal corporation, or any other unit of local government as the case may be at the time of the notice." 770 ILCS 60/23(b) (West 2010).

A "contractor" under section 23 is defined to include "any subcontractor." 770 ILCS 60/23(a) (West 2010). Plaintiffs argue that, because KMC, a subcontractor, owed contributions to the funds, section 23 entitles plaintiffs to a lien on any money the school districts owed the contractors.

¶ 19    In dismissing the complaints, the circuit courts concluded that ERISA preempts the Mechanics Lien Act and that preemption is affirmative matter defeating plaintiffs' claims. Pursuant to the supremacy clause of the United States Constitution, federal law can preempt state laws that interfere with or are contrary to federal law. U.S. Const., art. VI, cl. 2. Congress's purpose " 'is the ultimate touchstone' of pre-emption analysis." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978)). "Congress' intent to preempt State law may be manifested 'by express provision, by implication, or by a conflict between federal and state law.' " *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 335 (1996) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 654 (1995)).

¶ 20    On appeal, plaintiffs argue that the circuit courts' dismissals of their mechanic's lien claims must be reversed because the Mechanics Lien Act is not preempted by ERISA. A ruling on ERISA preemption is a question of law that we review *de novo*. *Trustees of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 772 (7th Cir. 2002) (citing *Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959, 966 (7th Cir. 2000), *aff'd*, 536 U.S. 355 (2002)). With certain exceptions not relevant here, section 1144 of ERISA, the preemption clause, provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to any employee benefit plan*." (Emphasis added.) 29 U.S.C. § 1144(a) (2006). Section 1144(a) is supplemented by two statutory definitions. The first broadly defines "state law" as including "all laws, decisions, rules, regulations, or other State action having the effect of law" (29 U.S.C. § 1144(c)(1) (2006)), and the second defines an "employee benefit plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan" (29 U.S.C. § 1002(3) (2006)). The parties correctly agree that the Mechanics Lien Act is a "state law" and that at least some of the funds qualify as "employee benefit plans" under ERISA.

## A. History of ERISA Preemption

*Biondi* set forth a comprehensive summary of the Supreme Court's recent jurisprudence in the area of ERISA preemption. The critical statutory phrase, "relate to any employee benefit plan," is not self-defining, and the Supreme Court "[has] been at least mildly schizophrenic in mapping its contours." (Internal quotation marks omitted.) *Biondi*, 303 F.3d at 773 (quoting *Carpenters Local Union No. 26 v. United States Fidelity & Guaranty Co.*, 215 F.3d 136, 139 (1st Cir. 2000)).

The Supreme Court's early ERISA preemption cases glossed over the phrase "relate to" in section 1144(a) (29 U.S.C. § 1144(a) (2006)) by portraying the phrase as deliberately expansive. *Biondi*, 303 F.3d at 773 (citing *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987)). In recent years, the Court has taken a more restrictive view of section 1144(a), beginning with the seminal decision of *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645 (1995), where the Court emphasized:

> " 'Our past cases have recognized that the Supremacy Clause, U.S. Const., Art. VI, may entail pre-emption of state law either by express provision, by implication, or by a conflict between federal and state law. And yet, despite the variety of these opportunities for federal pre-emption, we have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law. Indeed, in cases like this one, where federal law is said to bar state action in fields of traditional state regulation, we have worked on the "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." ' " *Biondi*, 303 F.3d at 773 (quoting *Travelers*, 514 U.S. at 654-55).

Additionally, the *Travelers* Court noted that, because preemption claims turn on congressional intent, it is necessary, as with any exercise of statutory construction, to begin the analysis " 'with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act.' " *Biondi*, 303 F.3d at 774 (quoting *Travelers*, 514 U.S. at 655). In addressing the "clearly expansive" text of section 1144(a) of ERISA, the Court concluded that, if the statute's "words of limitation"–*i.e.*, "relate to"–"were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for 'really, universally, relations stop nowhere.' " *Biondi*, 303 F.3d at 774 (quoting *Travelers*, 514 U.S. at 655).

*Travelers* also noted that the Court's prior decision in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983), did not provide much guidance. In *Shaw,* the Court held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 96-97. However, "an uncritical literalism [of the phrase 'connection with'] is no more help than in trying to construe 'relate to.' For the same reasons that infinite relations cannot be the measure of pre-emption, neither can infinite connections." *Travelers*, 514 U.S. at 656.

For this reason, the *Travelers* Court decided to add another layer to its ERISA preemption analysis, holding that, for purposes of section 1144(a) of ERISA, the evaluation

of a state law's relation to an employee benefit plan must "go beyond the unhelpful text and the frustrating difficulty of defining its key term, and *look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.*" (Emphasis added.) *Travelers*, 514 U.S. at 656. The Court amended the "objectives" principle from *Travelers* slightly in *California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316 (1997), rephrasing it to stress that the objectives of ERISA are also to be used to determine the "nature of the effect of the state law on ERISA plans." *Dillingham*, 519 U.S. at 325; see also *De Buono v. NYSA-ILA Medical & Clinical Services Fund*, 520 U.S. 806, 813-14 (1997) (utilizing the "objectives" principle from *Travelers* and *Dillingham*); *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001) (same). The Illinois Supreme Court and this court each have recognized how *Travelers* honed the test for ERISA preemption. *Scholtens v. Schneider*, 173 Ill. 2d 375, 382 (1996); *Hinterlong v. Baldwin*, 308 Ill. App. 3d 441, 448 (1999) ("In 1995, the Court retreated from its rigid textual analysis of section [1144](a).").

¶ 27                                    B. ERISA's Statutory Objectives

¶ 28        Cataloging ERISA's statutory objectives is a fairly straightforward exercise. ERISA's primary objectives are to "protect *** the interests of participants *** and their beneficiaries, by requiring the disclosure and reporting *** of financial and other information *** by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts" (29 U.S.C. § 1001(b) (2006)), and "by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance" (29 U.S.C. § 1001(c) (2006)). These objectives weigh against a finding of preemption, as barring plaintiffs' mechanic's lien claims would undermine the goal of protecting the interests of the plan participants and their beneficiaries.

¶ 29        Additionally, we know that, when Congress enacted the preemption provision of section 1144(a), it intended "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . ., [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction." (Internal quotation marks omitted.) *Biondi*, 303 F.3d at 774 (quoting *Travelers*, 514 U.S. at 656-57). Application of the Mechanics Lien Act does not conflict with ERISA plans or otherwise disturb the uniform body of benefits law; thus, this objective weighs against preemption as well.

¶ 30        Under this rubric, the Supreme Court has identified at least three instances where a state law can be said to have a "connection with" or "reference to" employee benefit plans: (1) when the state law "mandate[s] employee benefit structures or their administration" (*Travelers*, 514 U.S. at 658); (2) when the state law binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a

regulation of an ERISA plan itself (*Travelers*, 514 U.S. at 659-60); and (3) when the state law provides an alternative enforcement mechanism to ERISA (*Travelers*, 514 U.S. at 658). *Biondi*, 303 F.3d at 775.

¶ 31    Because plaintiffs' state-law claims are for statutory mechanic's liens, a traditional area of state regulation, defendants bear " 'the considerable burden of overcoming "the starting presumption that Congress does not intend to supplant state law." ' " *Biondi*, 303 F.3d at 775 (quoting *De Buono*, 520 U.S. at 814). Defendants argue that the circuit courts correctly concluded that they have rebutted the presumption against preemption, on the ground that the Mechanics Lien Act provides an alternative enforcement mechanism to ERISA's civil enforcement provisions and is therefore expressly preempted. The Supreme Court has identified two categories of state laws that act as alternative enforcement mechanisms to ERISA. One is where "the existence of a pension plan is a critical element of a state-law cause of action," and the other is where a "state statute contains provisions that expressly refer to ERISA or ERISA plans." *De Buono*, 520 U.S. at 815. The former is preempted under ERISA's express preemption provision in section 1144(a) (29 U.S.C. § 1144(a) (2006)), and the latter is preempted under ERISA's field ("complete") preemption statute (29 U.S.C. § 1132(a) (2006)). Recognizing that the Mechanics Lien Act does not expressly refer to ERISA or ERISA plans, defendants argue that the existence of the pension plans is a critical element of the mechanic's lien claims and that, but for the CBAs, KMC's conduct would not be actionable.

¶ 32    The issue of whether a state mechanic's lien claim qualifies as an alternative enforcement mechanism triggering ERISA preemption has resulted in a post-*Travelers* majority view and minority view, which are set forth in *Forsberg v. Bovis Lend Lease, Inc.*, 2008 UT App 146, 184 P.3d 610 (finding no preemption), and *International Brotherhood of Electrical Workers, Local Union No. 46 v. Trig Electric Construction Co.*, 13 P.3d 622 (Wash. 2000) (finding preemption), respectively.

¶ 33                                    C. *Forsberg*

¶ 34    In *Forsberg*, a hospital hired a general contractor to expand the hospital's building, and the general contractor hired a subcontractor for the project's electrical work. *Forsberg*, 2008 UT App 146, ¶ 2, 184 P.3d 610. The subcontractor executed a CBA, which required it to make trust fund contributions and pay wage assessments for its employees, but the subcontractor was historically late on making its contributions. *Forsberg*, 2008 UT App 146, ¶ 3, 184 P.3d 610. Several funds filed an ERISA claim in federal court seeking payment of the delinquent contributions. After the funds obtained a judgment against the subcontractor, the federal court issued a "Garnishee Order," requiring the general contractor to retain certain earnings due to the subcontractor for its work on the project. The amount was credited against the most delinquent contributions. *Forsberg*, 2008 UT App 146, ¶ 3, 184 P.3d 610. The subcontractor filed for bankruptcy protection, and the funds filed a state mechanic's lien against the hospital property. The general contractor and its surety executed a bond to release the lien, but the trial court ruled, *inter alia*, that the mechanic's lien claim was preempted by ERISA. *Forsberg*, 2008 UT App 146, ¶ 5, 184 P.3d 610.

¶ 35      On appeal, the funds argued that there is no evidence that, at the time of ERISA's enactment, Congress intended to supersede state mechanic's lien statutes or private bond statutes or that such statutes conflict with any provision of ERISA. The funds argued that, without such evidence, ERISA is presumed not to preempt such claims. In contrast, the defendants argued that the ERISA preemption clause is intended to be interpreted broadly and that employees may not use alternative causes of action to collect benefits protected by ERISA. *Forsberg*, 2008 UT App 146, ¶ 20, 184 P.3d 610.

¶ 36      After thoroughly chronicling ERISA preemption jurisprudence, the Court of Appeals of Utah noted that *Travelers* had "sent a strong message to the lower courts that section [1144](a) was subject to significant limitations and that any challenge to a state law of general application affecting an area of traditional state concern must overcome a strong presumption that Congress did not intend to preempt it" and that "most courts after 1995 have held that ERISA does not preempt mechanic's lien laws or contractors' bond statutes of general application. [Citations.]" *Forsberg*, 2008 UT App 146, ¶ 32, 184 P.3d 610. In agreement with a long line of cases, the court held that Utah's mechanic's lien and private bond statutes, which make no reference to trust funds or ERISA itself, are not preempted by section 1144(a). *Forsberg*, 2008 UT App 146, ¶ 32, 184 P.3d 610.

¶ 37      Like Utah's mechanic's lien statute, the Mechanics Lien Act (1) has general applicability, (2) predates ERISA, (3) makes no reference to trust funds or ERISA itself, (4) functions irrespective of ERISA, and (5) regulates an area of traditional state concern. See *Forsberg*, 2008 UT App 146, ¶ 34, 184 P.3d 610. Furthermore, the Mechanics Lien Act fits none of the categories of state law that "relate to" ERISA for purposes of preemption: (1) laws that regulate the type of benefits or terms of ERISA plans; (2) laws that create reporting, disclosure, funding, or vesting requirements for ERISA plans; (3) laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans; and (4) laws and common-law rules that provide remedies for misconduct growing out of administration of ERISA plans. See *Forsberg*, 2008 UT App 146, ¶ 35, 184 P.3d 610 (quoting *Airparts Co. v. Custom Benefit Services of Austin, Inc.*, 28 F.3d 1062, 1064-65 (10th Cir. 1994)).

¶ 38      The mechanic's lien claims in these appeals do not affect " 'relations among the principal ERISA entities–the employer, the plan, the plan fiduciaries, and the beneficiaries,' " and if there is no such effect, there is no preemption. *Forsberg*, 2008 UT App 146, ¶ 36, 184 P.3d 610 (quoting *Airparts*, 28 F.3d at 1065). No defendant in these cases is an ERISA entity: the employer, the plan, the plan fiduciaries, or the beneficiaries. See *Forsberg*, 2008 UT App 146, ¶ 37, 184 P.3d 610. Although the collection of contributions through a lien claim may indirectly affect relations among the principal ERISA entities, "such a broad application of the term 'affect' would create the same 'uncritical literalism' disapproved [of] in *Travelers*." *Forsberg*, 2008 UT App 146, ¶ 37, 184 P.3d 610 (quoting *Travelers*, 514 U.S. at 656).

¶ 39      *Forsberg* rejected the position advocated by defendants in these cases: that a mechanic's lien claim is preempted because the funds essentially are employees resorting to state law to avail themselves of an alternative cause of action to collect benefits. *Forsberg*, 2008 UT App 146, ¶ 38, 184 P.3d 610. The *Forsberg* court concluded that, because any ERISA preemption analysis must consider whether the action is between or among ERISA entities or between one or more ERISA entities and an outside party, the defendants' status as "outside parties"

means that the state claims are not alternatives to the remedies provided by ERISA, which governs actions only between or among ERISA entities. *Forsberg*, 2008 UT App 146, ¶ 38, 184 P.3d 610 (citing 29 U.S.C. § 1132 (2000 & Supp. V 2005)). The court stated, "[i]ndeed, '[p]erhaps the most salient consideration is whether the state law in question regulates the terms, duties, or administration of ERISA plans.' " *Forsberg*, 2008 UT App 146, ¶ 38, 184 P.3d 610 (quoting *Harmon City, Inc. v. Nielson & Senior*, 907 P.2d 1162, 1169 (Utah 1995)). Like the Utah mechanic's lien statute, the Mechanics Lien Act does not.

¶ 40    We are further persuaded by the *Forsberg* court's conclusion that permitting a mechanic's lien claim would not be contrary to ERISA's goal to ensure that " 'plans and plan sponsors would be subject to a uniform body of benefits law \*\*\* [and] to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." *Forsberg*, 2008 UT App 146, ¶ 39, 184 P.3d 610 (quoting *Ingersoll-Rand v. McClendon*, 498 U.S. 133, 142 (1990)). Like the Utah mechanic's lien statute, the Mechanics Lien Act is not a "benefits law" but, rather, is a law of general applicability, operating irrespective of ERISA. Furthermore, neutral application of the Mechanics Lien Act will not subject any ERISA entity to conflicting laws concerning the terms, duties, or administration of ERISA plans. See *Forsberg*, 2008 UT App 146, ¶ 39, 184 P.3d 610 (citing 29 U.S.C. § 1132 (2006)). We agree with *Forsberg* that there is nothing to rebut the strong presumption that Congress does not intend for ERISA to supplant state mechanic's lien statutes of general applicability. *Forsberg*, 2008 UT App 146, ¶ 40, 184 P.3d 610 (citing *Travelers*, 514 U.S. at 654). We hold that ERISA does not preempt the Mechanics Lien Act, because "the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." (Internal quotation marks omitted.) *Travelers*, 514 U.S. at 661.

¶ 41    Our holding conforms to the post-*Travelers* majority view that ERISA does not preempt mechanic's lien laws or contractor's bond statutes that have general application and do not mention ERISA. See *Forsberg*, 2008 UT App 146, ¶ 32, 184 P.3d 610 (citing *Southern California IBEW-NECA Trust Funds v. Standard Industrial Electric Co.*, 247 F.3d 920, 928-29 (9th Cir. 2001) (disavowing pre-*Travelers* cases and holding that payment-bond and stop-notice statutes of general application are not preempted by ERISA); *Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 575 (2d Cir. 1995) (citing *Travelers* and *Ingersoll-Rand* and concluding that the "surety law does not touch upon any rights or duties incident to the ERISA plan itself, nor does it conflict with any ERISA cause of action"); *Bellemead Development Co. v. New Jersey State Council of Carpenters Benefit Funds*, 11 F. Supp. 2d 500, 507-08, 516-17 (D.N.J. 1998) (citing *Travelers* and following *Ragan v. Tri-County Excavating, Inc.*, 62 F.3d 501 (3d Cir. 1995), to hold that ERISA does not preempt construction lien law of general application); *Betancourt v. Storke Housing Investors*, 82 P.3d 286, 288-96 (Cal. 2003) (citing *Travelers* and holding that mechanic's lien law of general application is not preempted by ERISA); *Hawai'i Laborers' Trust Funds v. Maui Prince Hotel*, 918 P.2d 1143, 1155-56 (Haw. 1996) (holding that mechanic's lien law of general application is not preempted by ERISA)).

-11-

*Trig* is in the minority of post-*Travelers* opinions, which hold that ERISA preempts a mechanic's lien statute of general application. *Forsberg*, 2008 UT App 146, ¶ 32 n.19, 184 P.3d 610 (citing *Trig*, 13 P.3d at 627-28). In *Trig*, a general contractor contracted to work on a project at a local community college and hired a subcontractor to perform the electrical work. The general contractor obtained a surety bond to protect all workers, mechanics, subcontractors, and materialmen supplying material and performing labor on the project; and the college withheld a portion of the contract price as a retainage trust fund. A CBA between the union and the subcontractor required the subcontractor to contribute a portion of its workers' wages to benefit-trust-fund plans falling under the ambit of ERISA. The subcontractor became delinquent on these contributions, and a union sued to foreclose on the general contractor's bond. Following the entry of summary judgment for the defendants, the matter reached the Supreme Court of Washington, where the dispositive issue was whether ERISA preempted the lien foreclosure action. *Trig*, 13 P.3d at 623.

The lien action in *Trig* was brought under Washington's public works lien statutes (Wash. Rev. Code Ann. §§ 39.08.10, 60.28.10), which provide a mechanism for a defaulting subcontractor's obligations to be collected from the general contractor. *Trig*, 13 P.3d at 624. In a narrow 5 to 4 decision, the Washington Supreme Court decided that, despite the new line of cases following *Travelers*, it would not depart from an earlier holding that ERISA preempts the Washington public works lien statutes. *Trig*, 13 P.3d at 624 (citing *Puget Sound Electrical Workers Health & Welfare Trust Fund v. Merit Co.*, 870 P.2d 960 (Wash. 1994)). The majority held that, "[a]s we understood in *Merit*, to the extent the public works lien statutes provide an enforcement mechanism by imposing liabilities on general contractors' bonds and retainage funds for the delinquent benefit plan payments of a subcontractor, they provide alternative enforcement mechanisms to those provided by Congress when it enacted ERISA. The state statutes, then, undeniably 'relate to' and 'connect with' ERISA for the purposes of ERISA's preemption provision." *Trig*, 13 P.3d at 625 (citing 29 U.S.C. § 1144(a) (1994)).

The dissent strongly disagreed, stating, "[i]n this case, the lien laws are of general applicability. They have only tenuous connections with ERISA plans. Under *Travelers*, such a connection is not enough to overcome the presumption that Congress does not intend to supplant state law." *Trig*, 13 P.3d at 631 (Johnson, J., dissenting, joined by Smith, Talmadge, and Ireland, JJ.). The dissent pointed out that the majority erroneously had employed an "abandoned" preemption analysis without considering the " 'objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.' " *Trig*, 13 P.3d at 628 (Johnson, J., dissenting, joined by Smith, Talmadge, and Ireland, JJ.) (quoting *Travelers*, 514 U.S. at 656). Upon consideration of ERISA's objectives and the traditional presumption that Congress does not intend to supplant state law (*Trig*, 13 P.3d at 628-29 (Johnson, J., dissenting, joined by Smith, Talmadge, and Ireland, JJ.)), the dissent concluded that the court's prior decision did not compel a finding of preemption, because "[t]he public works lien laws at issue in [*Merit*] and in this case are laws of general applicability that are used by a class of creditors regardless of whether there is an ERISA plan. Thus, *Travelers'* reaffirmation of *Ingersoll-Rand*'s holding [that preemption occurs when the state law was

specifically designed to affect employee benefits plans] has no bearing on whether [*Merit*] is good law." *Trig*, 13 P.3d at 630 (Johnson, J., dissenting, joined by Smith, Talmadge, and Ireland, JJ.). Like the *Forsberg* court, we conclude that the dissent in *Trig* is the better-reasoned approach, as it is supported by the narrower view on preemption set forth in *Travelers*.

¶ 46                                                      E. *McHugh*

¶ 47        Defendants renew their argument that plaintiffs' mechanic's lien claims are barred by *McHugh*, where a union sued a general contractor under the Prevailing Wage Act (820 ILCS 130/1 *et seq.* (West 2010)). The union sought an order requiring a contractor to pay benefit contributions owed by a subcontractor. *McHugh*, 230 Ill. App. 3d at 941. The Prevailing Wage Act establishes a "prevailing wage" to be paid on certain construction projects as an hourly wage "plus fringe benefits for health and welfare, insurance, vacation and pensions generally." (Internal quotation marks omitted.) *McHugh*, 230 Ill. App. 3d at 941-42 (quoting Ill. Rev. Stat. 1989, ch. 48, ¶ 39s-2 (now 820 ILCS 130/2 (West 2010))). Section 11 of the Prevailing Wage Act (820 ILCS 130/11 (West 2010)) creates a cause of action against contractors and subcontractors who fail to pay the prevailing wage. *McHugh*, 230 Ill. App. 3d at 941. Under section 11, an employee or an employee representative may sue a contractor or subcontractor in state court to recover the difference between the wages paid and the "prevailing wage" as defined in section 2. 820 ILCS 130/11 (West 2010). In *McHugh*, the union invoked section 11 in alleging that the subcontractor violated the Prevailing Wage Act when "it failed to pay six of its employees 'fringe benefit contributions.' " *McHugh*, 230 Ill. App. 3d at 941.

¶ 48        The trial court and the Appellate Court, First District, concluded that the complaint must be dismissed on the ground that the claim "related to" an employee benefit plan and, thus, was preempted by section 1144(a) of ERISA. *McHugh*, 230 Ill. App. 3d at 946. The appellate court relied heavily on language in pre-*Travelers* cases that said that ERISA's " 'deliberately expansive' language was 'designed to "establish pension plan regulation as exclusively a federal concern" ' " (*McHugh*, 230 Ill. App. 3d at 943 (quoting *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 46 (1987), quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981))); and said "Congress used the words 'relate to' in their broad[est] sense, rejecting more limited preemption language that would have made the clause 'applicable only to state laws relating to the specific subjects covered by ERISA' " (*McHugh*, 230 Ill. App. 3d at 943 (quoting *Shaw*, 463 U.S. at 98)). In finding preemption, the court held that "ERISA preemption is triggered by not just any indirect effect on administrative procedures, but rather by an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit." *McHugh*, 230 Ill. App. 3d at 946.

¶ 49        *McHugh* predates *Travelers* and is not a useful guide. We decline to follow *McHugh* and *Trig* because neither employs the narrower test for ERISA preemption that the Supreme Court announced in *Travelers* and its progeny. We emphasize that we reach no conclusion as to whether ERISA preempts the Prevailing Wage Act, as our analysis does not require us

to decide whether *McHugh* still is good law after *Travelers*. *Cf. State v. Philips*, 2000 WI App 184, ¶ 33, 617 N.W.2d 522 (*McHugh* is "inapposite" because it predates *Travelers*); *Burgess v. E.L.C. Electric, Inc.*, 825 N.E.2d 1, 14 n.12 (Ind. App. 2005) (ERISA does not preempt Indiana's prevailing wage act, and *McHugh* does not "represent modern ERISA preemption jurisprudence"). Rather, we comment only that *McHugh*'s outdated and incomplete ERISA preemption analysis regarding the Prevailing Wage Act does not compel us to conclude that ERISA preempts the Mechanics Lien Act.

¶ 50    Finally, we note that certain plaintiffs argue that they are funds that are not governed by ERISA and its preemption provision and, therefore, even if ERISA preempts the Mechanics Lien Act, the circuit courts erred in dismissing their claims on preemption grounds. We need not reach the issue, because we hold that ERISA does not preempt the Mechanics Lien Act. Moreover, Nicholas argues that allowing plaintiffs to enforce their mechanic's lien claims would lead to an inequitable result because Nicholas already has paid KMC the contributions that KMC was to pass along to the funds. However, Nicholas cites no provision in the Mechanics Lien Act that might afford such a defense or any authority for the proposition that equity is a factor to be considered in our ERISA preemption analysis.

¶ 51                                   CONCLUSION

¶ 52    In light of the uncertainty of *McHugh*'s validity after *Travelers*, we understand the circuit courts' reliance on the doctrine of *stare decisis* as support for continuing to follow *McHugh* in these cases. See *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008) (*stare decisis* requires courts to follow the decisions of higher courts). However, for the preceding reasons, we hold that ERISA does not preempt the Mechanics Lien Act, and the dismissals of plaintiffs' claims in the circuit courts of Kane County and De Kalb County are reversed and the causes are remanded for further proceedings consistent with this opinion.

¶ 53    Reversed and remanded.